Filed Nov. 24, 1885.

---

No. 12,114.

## HOLDERMAN ET AL. *v.* MANIER.

BAILMENT.—*Lien of Mill-Owner for Sawing Lumber.*—Where a mill-owner contracts to saw lumber for another at a stipulated price per thousand feet, his lien is not limited to any given lot of lumber for the price of sawing the same, but extends to the quantity in his possession for any general balance due him.

SAME.—*Action for Possession.—Partnership.—One Partner may Set up Lien Held by Firm.*—Where one partner only is made a defendant to an action for the possession of personal property, he may set up and rely upon a lien held by the firm in defence of his possession.

SAME.—*Surrender of Possession.*—The voluntary surrender of the possession of property, upon which a lien is held, operates as a waiver of the lien;

but mere permission by the lien-holder to an employee of the owner to pile up lumber in the former's mill-yard for its better preservation, is not a surrender of possession.

From the Noble Circuit Court.

*T. R. Marshall, W. F. McNagny* and *H. G. Zimmerman,* for appellants.

*G. W. Best,* for appellee.

NIBLACK, C. J.—This proceeding was commenced before a justice of the peace of Noble county, by John Holderman and Lewis Holderman against Daniel Manier, to recover the possession of a lot of lumber sawed from different kinds of timber, amounting in the aggregate to about eight thousand feet, and of the probable value of $129.

In the circuit court, to which the cause came by appeal, the verdict and judgment were in favor of the defendant.

There was evidence tending to establish the following facts: That in the fall of 1882 the defendant and his son Jacob were residents of, and the owners of a saw-mill in, Noble county; that one Klinehance then resided at Larwill, in Whitley county, and was engaged in trading in lumber and timber; that during that fall Klinehance proposed to the defendant that if he would move his mill onto a point on his, defendant's farm, near the line of the Pittsburgh, Fort Wayne and Chicago Railroad, and not far from the Whitley county line, he, Klinehance, would furnish a large number of logs to be sawed into lumber at the mill, and would pay him, the defendant, at the rate of $3.50 per thousand feet for all kinds of lumber which might be sawed out of the logs which should be thus furnished; that he, Klinehance, would in this way afford the defendant an opportunity to do sawing at his mill to the probable value of $2,000; that the defendant, acting in his own, as well as his son's behalf, accepted Klinehance's proposition, and moved his mill and put it up at the point indicated; that Klinehance thereupon, from time to time, furnished to the defendant and his son logs to be sawed, and

which were accordingly sawed into lumber, until he failed in business early in June, 1883; that the amount of sawing done in the meantime for Klinehance at the mill aggregated something, but not a large sum, over $1,000; that the lumber in controversy was sawed out of logs furnished by Kline-hance before his failure in business, and had been piled up together in the defendant's mill-yard by a man employed by Klinehance to do so; that, on the 5th day of June, 1883, Klinehance, finding himself unable to longer continue in business, sold and transferred the lumber in dispute, in con-nection with a large amount of other property, to the plain-tiffs; that at that time Klinehance owed to the defendant and his son the sum of $184.54, as a balance principally, if not entirely, due on account for sawing logs into lumber; that there was no specific agreement as to the time or the manner in which payments should be made by Klinehance to the de-fendant and his son, for the sawing which was to be done, but that in fact the parties to the agreement for the sawing had usually had settlements concerning the same once in the early part of each month; that a demand was made for the lumber in question by the plaintiffs before the commencement of this action, but the defendant refused to deliver it up until the balance due his firm from Klinehance was paid.

The evidence was conflicting as to some minor matters, but the general tendency of the evidence was to establish the facts relied on for a recovery in this case substantially as above stated.

It is first maintained that, under the contract between Klinehance and the defendant, the latter could only hold a lien upon any given lot of lumber for the price of sawing that particular lumber, and hence was not entitled to a lien upon any specific lot of lumber for any amount or balance due upon general account for sawing done at the mill.

A lien of the kind under discussion in this case is the right to hold possession of another's property for the satis-faction of some charge upon it. This right to a particular or

specific lien on goods in the hands of a tradesman or artisan,. for the price of work done upon them, is of common law origin, and has grown, naturally and necessarily, out of the transactions of persons with each other, as a matter of convenience as well as of public policy. This right has also been long since extended to every bailee who has by his labor and skill conferred some value on the thing bailed to him. In some cases the right to retain property on account of work performed, or expenses incurred, applies only to the identical property on which the work has been so performed, or on account of which the expenses have been so incurred. This rule applies to particular garments made by tailors out of cloth delivered to them for that purpose, and to other articles of property separate and distinct in their character to a similar extent. In other cases, this right to retain property until certain charges against it shall be paid, extends to a general balance due from the bailor to the bailee, such as factors,. calico-printers, packers, fullers and other like bailees, to whom property is delivered, against the several parts of which it is impracticable to keep separate and distinct charges. Wait Actions and Defences, vol. 3, 301; vol. 4, 319, 320; vol. 7, 215, *et seq.; Hanna* v. *Phelps,* 7 Ind. 21; *Tucker* v. *Taylor,* 53 Ind. 93; *Mooney* v. *Musser,* 45 Ind. 115; *East* v. *Ferguson,* 59 Ind. 169; *Shaw* v. *Ferguson,* 78 Ind. 547; *Bunnell* v. *Davisson,* 85 Ind. 557.

By analogy, as well as from the very necessity of the case, the lien of Manier & Son on the lumber they sawed, under their contract with Klinehance, extended to any general balance which was or might have been due them at any time, and consequently fell within the latter class of liens, above referred to.

It is true, as contended by counsel, that generally the possession of property can not be defended upon the ground that some third person has a lien upon it, but in this case Daniel Manier's possession of the lumber was as a member of the firm of Manier & Son, and being made the only rep-

resentative of his firm by the prosecution of this suit against him alone, he had the right to set up and rely upon the alleged lien of, the firm in defence of his possession.

It is also true, as further contended, that the voluntary surrender of the possession of property, upon which a lien is held, operates as a waiver of the lien; but we do not regard the permission extended by Manier & Son to an employee of Klinehance to pile up the lumber in suit in separate piles on their mill-yard, as a surrender of the possession of the lumber by them. The piling up of the lumber, under the circumstances which seemingly attended it, amounted to no more than a temporary handling and readjustment of it, with a view to its better preservation while it might remain in the mill-yard which was under the personal control, and hence in the possession, of Manier & Son.

So far as a proper decision of this case was involved, it was quite immaterial whether all the items, which went to make up the balance due from Klinehance to Manier & Son, were for sawing lumber, as the evidence established beyond all controversy that in any event much the larger part of such balance was for sawing done by Manier & Son under their contract with Klinehance, and as proof that any substantial amount was so due under such contract, was sufficient as a defence to this action.

If a tender to Manier & Son of an amount less than $184.54, on the ground that the amount so tendered was all that was due for sawing, had been shown, a different question for the consideration of the jury might have been presented.

Objections are urged to some of the instructions given to the jury at the trial, but what we have already said practically disposes of all the questions raised by the instructions complained of, and renders unnecessary any special and particular notice of those instructions.

The judgment is affirmed, with costs.

Filed Dec. 8, 1885.