Perrine *v.* Barnard *et al.*

No. 17,504.

PERRINE *v.* BARNARD ET AL.

SALE.— *For Cash.— Personal Property.— Constructive Delivery.—*
*Seller's Lien.—Resale by Purchaser.—*A seller for cash of lumber
which remains in his lumber yard is not deprived of his lien for the
purchase price as against a purchaser from the buyer, by setting it
apart in such manner as to constitute a constructive delivery suf-
ficient to vest title in the buyer.

SAME.—*Subpurchaser.—Notice.—Lien of First Vendor.—Possession.—*
A subpurchaser who knows that lumber purchased by his seller is
in the yard and apparently in the possession of the original seller
is bound to take notice that the latter is claiming a lien thereon for
unpaid purchase money.

From the Henry Circuit Court.

*T. E. Ellison,* for appellant.

*M. E. Forkner* and *W. O. Barnard,* for appellees.

JORDAN, J.—Appellees, Cyrus Barnard and Ambrose
Barnard, partners doing business under the firm name
of "C. Barnard & Son," instituted this action for the
recovery of money and to enforce a seller's lien upon
certain described lumber, which, as they alleged, was in
their possession. In the first paragraph of their com-
plaint they state substantially, that in May, 1893, they
owned and operated a saw-mill and lumber yard in the
town of Greensboro, Henry county, Indiana; that
they had, upon their yard, a large amount of oak and
other lumber; that prior to May, 1893, at divers times,
they sold to one Herbert V. Root, three hundred thou-
sand feet of lumber, which, as it was agreed upon
between the parties, should be paid for by Root when
it was taken possession of by him; that such had at
all times been the course and custom between them of

dealing in their said business; that this lumber was measured and placed on sticks in plaintiffs' yard and left in their possession; that Root during his life, paid the purchase price of said lumber, except $315.00, which is unpaid; that plaintiffs have at all times been in possession of the lumber and still hold the same as a security for the unpaid balance of the money; that Root has sold and assigned the lumber to the defendant, Perrine, and they demand judgment for the enforcement or foreclosure of their alleged lien.

The second paragraph sets up, that they agreed to sell Root the lumber in question; that it was measured and placed upon sticks in their yard and left in their possession as a pledge and security for the purchase price and that they still hold and have the possession thereof; that Root sold and assigned the lumber to Perrine subject to their lien, and the death of the former is alleged and they ask for a foreclosure of the lien.

The third paragraph avers, that they sold to Root at divers times over six thousand dollars worth of lumber, as shown by a bill of particulars filed; that it was the uniform dealing and understanding between them and the former that he should, at his pleasure, measure and separate the several kinds of lumber and place the same on sticks in their yard and leave it there in their possession until he had paid for the same; that on May 20, 1893, in pursuance of said course of dealing, they sold to Root a specified number of feet of lumber, and also on August 1, 1893, they, in like manner, sold him a certain number of feet as therein mentioned. It is averred, that the lumber was measured and piled upon sticks and left in their yard in their possession until paid for, and that all of said lumber known as Cooper oak remains in their possession; that on the —— day of August, 1893, there was due to the plaintiffs upon the

lumber sold, $315, and it was therefore agreed between the plaintiffs and Root that this Cooper oak lumber shall remain in their possession and be held by them until the full payment of the purchase money, and that the same yet remains in their possession and has not been delivered; that Perrine purchased the lumber from Root, who is now dead. Prayer for the enforcement of their lien, etc.

There was an answer in denial and also setting up affirmative facts in avoidance of plaintiffs' cause of action. A trial resulted in the court rendering a judgment in favor of appellees, foreclosing their lien.

The principal question presented for our consideration by appellant's learned counsel, and, in fact, the only one argued by him, is that the finding and judgment of the trial court is contrary to law and is not sustained by the evidence.

We have read and examined the evidence and find that it tends to establish substantially the following facts: That appellees, at and prior to the commencement of this action, were engaged in operating a sawmill and lumber yard in Henry county, Indiana, as alleged in their complaint; that Root and appellant resided in Fort Wayne, Indiana, both of whom were engaged in the business of buying and selling lumber. For several years prior to this action, he (Root) had been in the habit of buying lumber of appellees. When he purchased lumber from them it would be measured out and they would place it on sticks in their mill yard, where it remained in their possession until they, under an agreement with Root, would haul it to the railroad and place it in the cars to be shipped to points directed by him. The hauling of the lumber to the railroad by appellees was at their own expense, but they were paid two dollars per car extra by Root for placing the lum-

ber in the car. At the beginning of the dealings between these parties, he paid cash for all lumber purchased by him. Subsequently, at times, he would give his note to appellees with the agreement that they should discount it, and he would stand the discount in order to make it the same to appellees as a cash payment. There is also evidence showing that in February, 1893, appellant gave Root an order for one hundred and eighty thousand feet of Cooper oak lumber, to purchase the same anywhere he could, and when it was turned over to appellant, the latter was to pay for it, and that the lumber in question appears, or is claimed by appellant to be a part of that purchased by Root from appellees. Some few days prior to August 3, 1893, appellees were in need of money. Root came to see them and informed them that he could not raise the money and did not know when he could, but further said : "There is enough lumber here," meaning that purchased by him, "to make you safe, but if you people are not satisfied I can send you ten thousand dollars security." The $315.00, the amount in suit was not embraced in any note or anything of that character, and was unpaid. Root died some time prior to the beginning of this action leaving the balance of the purchase price, in suit, unpaid. Appellant frequently bought lumber of Root, in this manner, he would give the latter an order for a bill of lumber and Root was privileged to purchase the same from whomever he pleased. Appellant would advance money to him and there was a running account between them, and when he purchased lumber of the latter he would give him credit upon his account. At the time of the conversation between Root and the appellees about the lumber being enough to secure them, they had no knowledge that any of it had been sold by Root to appellant. Before appellant purchased the

lumber in question he visited the lumber yard of appellees and saw the situation there, and at the time he purchased the same as stated by him, he knew it was in the yard of appellees on sticks. Appellees did not know that appellant was claiming to have purchased the lumber from Root until after the latter's death, etc.

There is evidence to some extent tending to controvert the facts above stated, but the weight to be given to the evidence in the cause was a matter resting with the trial judge. Considering the material facts given above, as established, the question arising is, do they, under the law, sustain the judgment of the lower court? The chief contentions of appellant's counsel are: 1. That the lumber in question was actually delivered to Root when sold. 2. That the lumber was sold by appellees to Root on credit, and that, in either event, under the law, no lien existed in favor of appellees. In order to reach a proper determination of the questions herein involved, it is necessary to examine some of the principles of law pertaining to liens of the character of the one under consideration. A seller of goods has a lien upon them for the purchase money unpaid so long as they remain in his possession, and this lien exists only when the property in the goods has passed to the buyer, as no man can have a lien upon his own goods. As the seller's right of lien depends upon actual or constructive possession, he cannot maintain it, generally speaking, after the property sold has come into the possession of the purchaser. The authorities sustain the proposition that there may be such a constructive delivery of the goods or chattels as will suffice to pass the title, but will not destroy the lien. If the property sold be counted out and set apart for the purchaser, there is such a constructive delivery of the same as to vest the title thereto in the purchaser, and the property will be at his risk, but

the seller will retain the right to refuse to deliver it without payment, provided the sale was not upon credit. In support of these several principles as above stated, see Jones Liens, Vol. 1 (2 ed.), sections 800, 806 and 807; Story Sales, sections 281, 282, 282a and 283; Lawson Rights and Remedies, section 3106, p. 5061; Am. and Eng. Ency. of Law, Vol. 21, pp. 601 to 611, inclusive; *Southwestern, etc., Press Co.* v. *Stanard*, 44 Mo. 71; 100 Am. Dec. 255; *Arnold* v. *Delano*, 4 Cush. 33, 50 Am. Dec. 754; *Holderman* v. *Manier*, 104 Ind. 118; *Walls* v. *Long*, 2 Ind. App. 202, and cases there cited.

The lien, if it once exists, will continue in favor of the seller as against a sub-purchaser, if the former has in no way assented to or induced the re-sale of the property, so as to be estopped by the application of the rule that where one of two innocent persons must suffer by the act of the third, he who has enabled such third person to occasion the loss must bear it himself. See sections 841, 846 and 847, Jones Liens, *supra.*

Applying the principles above stated to the evidence in the case at bar, and the conclusion follows that the judgment below must be upheld as being sustained thereby in accordance with the law.

It appears from the summary of the evidence which we have set out, that when appellees sold lumber to Root, it would be measured and set apart upon sticks in their mill yard, and there it remained until they would haul it to the railroad station, and place it upon the cars for shipment, and the labor of hauling the lumber to the cars, and putting the same aboard, as it appears under the arrangement between the parties, devolved upon them, and not upon Root; he paying them two dollars extra per car, not for hauling to the station, but for placing it in the car ready for shipment. The sales

seem to have been made for cash, or that which was to appellees equivalent thereto.    It is stated in evidence by appellees that the price of the lumber involved in this suit was not embraced in any notes given by Root. This apparently eliminates the question of credit from the case.    The fact that the lumber was in the possession of the appellees, seems to have been recognized by Root, when he said to them in the conversation to which we have referred, that "There is enough lumber here to make you people safe."

The lumber in question was, at the time of the commencement of this action, still in piles upon sticks in in appellees' mill yard, with the amount of the purchase price involved unpaid.

We therefore think and so hold, that, under the facts, appellees had such possession of the lumber as to entitle them to their lien as against Root.    The question then arises, did it exist at the time they instituted this action as against the appellant, who claims to be a sub-purchaser from Root for value paid?    From the authorities of law herein cited, it appears that where the seller has not assented to, or induced the re-sale of the property, his lien is not destroyed, and such sub-purchaser takes it subject thereto.

It appears, as we have seen, that appellant was a wholesale dealer in lumber, and had what is termed a running deal or account with Root.    That he would advance money to the former, and then when he would give him an order for lumber and receive the same, he would give Root credit for it upon his account.

Up to the death of the latter, appellant had advanced him on a general account, some four thousand dollars and over, and as security for the same he held an insurance policy for four thousand dollars on Root's life, and at his death he (Root) was owing appellant a balance on account

Perrine *v.* Barnard *et al.*

of money advanced him on lumber transactions, the sum of about $5,300.00. The appellant was not able to fully state upon his examination on the trial, as to how he paid Root for the lumber in controversy—whether by cash or by giving him a credit upon the account which he was owing him. Shortly before appellant gave Root an order for the purchase of lumber, as we have seen, he visited the mill yard of appellees, and saw the situation of the lumber, and when he purchased it from Root he admits that he knew it was on sticks in the appellees' yards. It does not appear that appellees had any knowledge of the sale of the lumber to appellant, or induced him to buy the same. The first knowledge that they seem to have of appellant's claim to it was after the death of Root. Appellant states that he purchased of Root one hundred and eighty thousand feet of lumber. In other words, he gave an order for him to fill to that amount, and Root had the privilege to purchase from appellees or from other parties. In fact, it does not clearly and specifically appear what lumber appellant did purchase of Root, or that he had title to the particular lumber herein involved.

The fact that appellant visited the yard of appellees before he purchased the lumber, and saw the situation of the same, and knew it was in their yard upon sticks, and at least apparently in their possession, we think was sufficient to put him upon inquiry, and had he made inquiry of them, we must presume that he would have ascertained that they had possession of the property, and were claiming a lien thereon for unpaid purchase money. Where one has received knowledge of such facts as should put him on inquiry, the law enjoins upon him the duty to do so with diligence and in good faith.

In any view of the case as it is disclosed by the evi-

dence, we think that it is manifest that appellees retained their lien, and the trial court was warranted in rendering judgment in their favor.

Judgment affirmed.

Filed November 5, 1895.