## BAKER ET AL. *v.* BAKER, ADMINISTRATRIX, ET AL.

[No 7,059. Filed January 6, 1909.]

1. EVIDENCE.—*Declarations.—Title to Money Loaned.—Decedents' Estates.*—In an action by an administratrix against her decedent's mother and sisters to recover possession of certain notes and mortgages alleged to belong to her decedent's estate, evidence that decedent, in the absence of defendants, said that he had made many loans in his county, and that most of them were taken in his sisters' names to prevent the payment of taxes thereon, is inadmissible. p. 28.

2. EVIDENCE.— *Declarations.— Self-Serving.*— Self-serving declarations made in the absence of the adverse party are ordinarily inadmissible in evidence. p. 28.

3. EVIDENCE.—*Declarations Accompanied by Acts.—Res Gestae.*— Where an act is admissible in evidence, declarations accompanying such act, and explanatory thereof, are admissible as a part of the *res gestae.* p. 28.

4. EVIDENCE.—*Title.—Declarations of.*—Declarations, in order to be admissible as proof of title, must be shown to have been made when the declarant was in possession, and must have been made concerning such title or ownership. p. 30.

5. EVIDENCE.—*Declarations.—Title.*—In an action by an administratrix against her decedent's mother and sisters to recover possession of certain notes and mortgages alleged to belong to her decedent's estate, declarations made by such decedent in reference to loans made by him, to be admissible in plaintiff's favor, must have been made concerning some loan represented by the notes or mortgages in question. p. 30.

6. EVIDENCE.—*Desire to Purchase Bank-Stock.—Financial Standing of Decedent.—Title to Notes and Mortgages.*—In an action by an administratrix to recover possession of certain notes and mortgages alleged to be the property of her decedent, evidence that decedent wanted to buy a controlling interest in a bank, and that the witness had made an investigation of decedent's property and found him to be worth $7,000, or $8,000, is inadmissible. p. 31.

7. APPEAL.—*Erroneous.—Admission of Evidence.—Trial by Court.* —Where the trial judge continually overruled objections to incompetent evidence, the presumption is that he considered such evidence in arriving at his decision, and such rulings, therefore, constitute reversible error. p. 31.

From Starke Circuit Court; *John C. Nye,* Judge.

Action by Viola Baker, as administratrix of the estate of Julius E. Baker, deceased, against Louisa Baker and others. From a judgment for plaintiff, a part of the defendants appeal. *Reversed.*

*M. M. Hathaway, M. Winfield* and *Beeman & Foster,* for appellants.

*W. C. Pentecost, Oscar B. Smith* and *Henry A. Steis,* for appellees.

HADLEY, J.—This was an action brought by appellee Baker against appellants to recover some notes, mortgages, bank-stock and other personal property, which, it is averred, belonged to the estate of said appellee's decedent, Julius E. Baker. It is alleged that appellant Louisa Baker had intermeddled with the estate and unlawfully obtained possession of said property, and refused to deliver up the possession or account for the same, although demand therefor had been made.

It is shown by the uncontradicted evidence that decedent was a son of appellant Louisa Baker, and brother of appellants Tracy G. Miles and Cleo Humphrey; that he was the cashier of the Bank of Starke County at Hamlet; that he made numerous loans to divers persons in the names of appellants Tracy G. Miles and Cleo Humphrey; that he kept notes and mortgages, representing a part, if not all, of these loans, in a drawer in the safe of the bank. The evidence is undisputed that this drawer had two keys—one kept by decedent, the other by appellant Louisa Baker. The keys to this drawer were each numbered "1." The drawer had no number on it.

A few days before the death of decedent, and while he was confined to his bed, appellant Louisa Baker went to the bank and took the securities in controversy from the drawer, stating, in effect, that decedent had authorized her to do so. There is no evidence that she was not so authorized. It was the theory of the administratrix that decedent used his own

money in making these loans and investments, taking them in the names of his sisters to avoid taxation; while on the part of appellant Louisa Baker it was claimed it was her money he was using, handling it as his own, and that the securities representing these loans were her property.

On the trial a witness named Corbit was permitted to testify, over the objections of the appellant, that at a time not stated, and in the absence of the appellants, he had had a conversation with decedent in which decedent stated that he had made numerous farm loans in Starke county; that the most of the loans were in his sisters' names; that he gave as a reason for this that he did not want to pay any more tax than other money lenders were paying.

This testimony was incompetent. It is a general rule of law that self-serving declarations, made in the absence of the adverse party, are inadmissible in evidence (*Brown* v. *Kenyon* [1886], 108 Ind. 283; *Bristor* v. *Bristor* [1882], 82 Ind. 276); the exception to this rule being that when such declarations accompany and are connected with some act which of itself is admissible as tending to prove some question in issue, they may be given as qualifying or explaining such act as a part of the *res gestae*. *Creighton* v. *Hoppis* (1885), 99 Ind. 369; *Boone County Bank* v. *Wallace* (1862), 18 Ind. 82; *McConnell* v. *Hannah* (1884), 96 Ind. 102; *Durham* v. *Shannon* (1888), 116 Ind. 403, 9 Am. St. 860; *Burr* v. *Smith* (1899), 152 Ind. 469; *Remy* v. *Lilly* (1899), 22 Ind. App. 109.

The rule and exception and principle governing the same are clearly stated in *Creighton* v. *Hoppis, supra,* where the court said: "It is the general rule that where an act is competent, so also are the declarations accompanying the act. It was said by Professor Greenleaf: 'But no reason is perceived why every declaration accompanying the act of possession, whether in disparagement of the claimant's title, or

otherwise qualifying his possession, if made in good faith, should not be received as part of the *res gestae.*' 1 Greenleaf, Evidence (14th ed.), §109. * * * 'The rule of law is, that where it is necessary, in the course of a cause, to inquire into the nature of a particular act, and the intention of the person, who did the act, proof of what the person said, at the time of doing it, is admissible in evidence, for the purpose of showing its true character.' [*Downs* v. *Lyman* (1826), 3 N. H. 486.] * * * In the cases cited by the appellant the evidence consisted of naked declarations unaccompanied by any act, and in such cases a very different rule obtains. We do not hold, nor mean to hold, that declarations unaccompanied by an act are admissible; on the contrary, we understand the rule to be against their admissibility. Nor do we hold that declarations accompanying an act are competent, where the act itself cannot be proved, but we do hold that where the act is competent, so also are the declarations made at the time it was performed. Even in such cases, it is only declarations explanatory of the act and immediately connected with it that are admissible. Narratives of a past transaction, although given at the time an act is done, are not competent. In order that the declarations may be competent it must appear that they relate to the thing then done, and that they have a direct connection with it."

Measured by this standard, it can readily be seen that the evidence should have been excluded. It was a broad general statement unconnected with any act itself admissible. It could not have been a part of the *res gestae,* since there was no *res gestae.* It might have been an idle boast or a part of his scheme of "four-flushing with his mother's money," as was testified he said he was doing, or a plan to build up a title in himself. These suggestions illustrate the danger of such testimony.

It is urged on behalf of appellee Baker that at this time

decedent was in possession of the securities in controversy and that it was this act of possession of which the conversation formed a part of the *res gestae*. But, in the first place, it is not shown that decedent at that time was in possession of this property. There was not a word said about his possession or in explanation thereof. The name of no debtor was mentioned. If the conversation tended to prove anything, it was to prove his general custom of making loans.

4.

The rules of this class of evidence are well established, and should not be extended. Such declarations, to be admissible, must be something more than mere general or random statements. They must not only be connected with some act, but the act itself must be something in relation to the property in controversy. For example, a witness was asked what decedent said at the time he was making a loan, as to why the loan was made in the name of his sister. If the loan inquired about had been one of the debts in controversy the evidence would have been admissible; but it was not, and therefore was not admissible. What was said about a transaction not connected with the matter in controversy would have no probative force. The transaction itself could not be proved. Therefore conversation relating thereto could not.

5.

Other witnesses were permitted to testify to substantially the same conversations and similar conditions, and for the same reasons such testimony was inadmissible. Mr. Stanton was permitted to testify that, at a time not stated, decedent had said to him that the money he (decedent) had loaned to Joe Ballinger at a time previous to the conversation was his own money, and not the bank's, and the bank had nothing to do with it. This was a narrative of a past occurrence, unconnected with any act. The Joe Ballinger loan was not one of the securities in controversy, and the evidence was inadmissible.

Objection is made to the testimony of witness Jolly, who

testified that at a time when decedent was making a loan to one Carlson, one of the notes in controversy, he said that the money was his money, but that he was putting it in the name of his sister to avoid taxation. This declaration was made in connection with an act itself admissible, and therefore formed a part of the *res geslae,* and, under the rule before laid down, was admissible. It is a good illustration of the distinction sought to be made in this opinion.

The same witness was, however, permitted to testify to a number of general statements disconnected from any act, and, under the rule stated, such statements would be inadmissible. Witness McCormich was permitted to testify that decedent wanted to buy a controlling interest in the bank, and said he wanted to pay part in cash and part in mortgage loans, which sale was never consummated; and also at the time decedent was appointed cashier of the bank he made an investigation of decedent's financial standing, and, as a result of such investigation, witness became satisfied that decedent was conservatively worth $7,000 or $8,000. We can conceive of no possible theory under which such testimony would be admissible, and appellee has not favored us with any reason justifying it.

Appellees insist that, since the cause was tried by the court and the judgment is clearly right, the cause should not be reversed, even though erroneous evidence was admitted. But the court permitted the erroneous evidence to be introduced over the continued objections of appellants. Having ruled it was competent, he must be presumed to have considered it in arriving at a decision. The erroneous testimony was not a single isolated case, but occurred many times. It is not at all clear that the judgment is right. In some instances it is clearly not right. Numerous other questions are presented, but they may not arise on another trial, and are therefore not considered.

Judgment reversed, with instructions to grant a new trial.