## WELKER *v.* APPLEMAN.

[No. 6,575. Filed December 9, 1909.]

1. LIENS.—*Waiver.*—*Surrender of Possession.*—*Agents.*—The surrender of possession of goods, by an agent, with no intention of preserving his lien, constitutes a waiver of such lien, and defeats such agent's claim therefor. p. 703.

2. PLEADING.—*Answer.*— *Reply.*— *Replevin.*— *Liens.*— *Waiver.*— An answer, in an action in replevin, showing that the defendant agent retained a common-law lien on the goods in question, is sufficient without negativing a waiver of such lien by a surrender of possession, such waiver constituting a proper matter for reply. p. 703.

3. LIENS.—*Continuance after Surrender of Possession.*—*Agents.*— As between a principal and his agent, the surrender of possession

by the agent, no intention to relinquish his lien existing, does not extinguish his lien. p. 703.

4. PLEADING.—*Answer.*—*Burden of Proof.*— *Liens.*— *Agents.*— An answer, in an action in replevin, that the defendant was plaintiff's agent for the purchase of the wool in question; that defendant performed his part of the contract and that he retains possession only for the purpose of securing his lien, is sufficient, such answer being in denial of plaintiff's ownership, and casting the burden of proving ownership upon the plaintiff. p. 703.

5. TRIAL.—*Interrogatories.*—*Inferences Against Verdict.*—*Liens.*— *Surrender of Possession*—An answer to an interrogatory to the jury showing the contract between an agent and his principal to be that the agent should purchase wool, that the principal should furnish the necessary money for payment, and sacks for storing, and that for "storing, sacking and delivering the same on board the cars as aforesaid," the agent should receive one cent per pound for the wool purchased, cannot be construed with an answer to another interrogatory making it read that the agent should deliver the wool "to plaintiff on board the cars at the depot for shipment," especially where in the latter answer the jury expressly denied the execution of the contract as thus contended for. p. 705.

6. TRIAL.—*Interrogatories.*—*Inferences.*—Inferences will not be indulged in support of answers to interrogatories as against a general verdict. p. 706.

7. TRIAL.—*Interrogatories.*— *Liens.*— *Agents.*— *Delivery to Principal.*—Answers to interrogatories that an agent contracted to deliver wool to his principal on board the cars for shipment, are not in irreconcilable conflict with a general verdict for the agent, where his answer averred that he retained a lien for his services upon such wool so delivered. p. 706.

8. PRINCIPAL AND AGENT.—*Commissions.*—*Liens For.*—*Contracts.*— *Completion.*—Where the time for payment of an agent's commissions is not specified, they are due upon the completion of the service. p. 706.

9. SALES.—*Passage of Title.*—*Implied Conditions.*—The vendor's delivery of the goods ordinarily passes title to the property, but an implied condition thereof is the immediate payment of the price by the purchaser, and, failing therein, the vendor may reclaim his property. p. 706.

10. PRINCIPAL AND AGENT.—*Liens.*—*Delivery.*—An agent who purchases wool and delivers it on board cars for his principal, has the right to retain possession thereof until his commissions are paid. p. 707.

11. LIENS.—*Abrogation.*—*Contracts.*—A common law lien is destroyed by a contract between the parties inconsistent therewith. p. 707.

12. LIENS.—*Relinquishment.—Contracts.*—A contract to pay commissions at a time subsequent to the delivery of the goods, is a relinquishment of the common-law lien for such commissions. p. 708.

13. LIENS.—*Conversion.—Demand.*—A lienor's claim of absolute ownership when demand is made by the owner constitutes a conversion, but his claim of right of possession until his lien is paid is proper. p. 708.

14. APPEAL.—*Instructions.— How Questioned.— New Trial.*— Instructions not included in the motion for a new trial cannot be questioned on appeal. p. 709.

15. TRIAL.—*Instructions.—When Shown Harmless by Interrogatories.—Agents.—Exceeding Powers.*—An instruction that an agent is entitled to possession of goods bought until his principal pays to him the purchase price and his commissions, though such agent exceeded his authority, is harmless, where answers to interrogatories show that he did not exceed his authority. p. 709.

16. PRINCIPAL AND AGENT.—*Ratification.*—A principal who with full knowledge of his agent's acts, approves them, thereby ratifies such acts, and they are as binding as though done with his authority in the first instance; and such ratification cannot be recalled. p. 710.

17. PRINCIPAL AND AGENT.—*Exceeding Authority.*—A principal cannot be compelled to accept from an agent goods purchased in excess of his authority. p. 711.

18. TRIAL.—*Instructions.—How Considered.*—Reversible error is not shown by the giving of instructions, where such instructions, as a whole, fairly present the case to the jury. p. 711.

19. EVIDENCE.—*Declarations.—Res Gestæ.*—Where an agent's acts in loading wool upon cars are admissible in evidence, declarations made as a part thereof, and in explanation thereof, are admissible as a part of the *res gestæ.* p. 711.

20. EVIDENCE.—*Compromise.*—Letters written in an effort to compromise, which contain no independent facts bearing on the case, are inadmissible in evidence. p. 712.

From Steuben Circuit Court; *Emmet A. Bratton,* Judge.

Action by John M. Welker against Squire H. Appleman. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*R. L. Starr, Frank M. Powers,* and *John G. Yeagley,* for appellant.

*William M. Brown* and *Clyde C. Carlin,* for appellee.

HADLEY, J.—Appellant sued appellee to recover possesssion of one carload of wool. Appellee admitted that the appellant was the owner of said wool, but claimed the right of possession by reason of a common-law lien for commissions and money advanced in the purchase of the wool as the agent of appellant, which money he claims was unpaid.

The complaint is in one paragraph in the ordinary form of an action in replevin, to which appellee answered in two paragraphs. The first is a general denial. The second avers that in April, 1906, appellant and appellee entered into an agreement that appellee should purchase wool for appellant with money to be furnished for that purpose by appellant; that by the terms of said contract appellee was to purchase, store, sack and load said wool on cars for shipment, and was to receive therefor a commission of one cent per pound on every pound so bought by him; that in pursuance of said agreement appellee purchased wool for appellant for which he paid the sum of $17,407.37; that his commission, as fixed by said agreement, was $615.37, making an aggregate amount of $18,022.74; that appellant paid to appellee thereon the sum of $16,512.96 and no more, leaving a balance due to appellee of $1,509.78; that appellee bought, stored, sacked and loaded said wool on cars for shipment according to said agreement, and in all other respects fully complied with his part of the agreement; that appellant has approved the wool so purchased by appellee; that the wool described in the complaint is a part of the wool so purchased by appellee for appellant; that before the commencement of this action appellant had taken possession of and converted to his own use all of the wool so bought by appellee, except the portion thereof described in the complaint; that at the beginning of this action appellee was in possession of the wool described in the complaint, wherefore appellee says he has a lien on said wool for the sum of $1,509.78, and is entitled to possession thereof.

To this paragraph of answer appellant filed a demurrer for want of facts, which demurrer was overruled. This ruling is assigned as error. Appellant's objection to this paragraph of answer is that it does not aver that appellee had been in continued and uninterrupted possession of said wool since he purchased the same. It is true, as appellant contends, that appellee could not defeat appellant's action on the ground of an agent's lien, if it were shown that he had in any way waived that lien. An absolute surrender of possession of the property by appellee, after the lien had attached, with no intention on the part of appellee to keep or preserve his lien, would amount to a waiver of the same. 1 Jones, Liens (2d ed.), §§466, 999.

But appellee was not required, in his answer, to negative a waiver. This is a matter of defense to his claim of lien. A lien of this character may continue, as between claimant and owner, after the possession is changed, if there is no intention on the part of the lienor to relinquish his right. *Walls* v. *Long* (1891), 2 Ind. App. 202; *Allen* v. *Spencer* (1845), 1 Edm. Sel. Cas. (N. Y.) 117; *McFarland* v. *Wheeler* (1841), 26 Wend. 467; *Holderman* v. *Manier* (1885), 104 Ind. 118; *Perrine* v. *Barnard* (1896), 142 Ind. 448.

By his answer, appellee exhibited a state of facts that entitled him to a lien on the wool purchased by him and that was in his possession, and this was all he was required to aver in his special answer. Neither is the answer subject to the objection that it does not deny that appellant is the owner and entitled to the possession of the wool, nor that it admits these facts to be true. The answer does specifically deny the right of possession in appellant; but it appears from the authorities that without this specific denial such a special answer is not an admission of ownership or right of possession in appellant, it being well settled that a plea of property in the defendant is not a

plea in confession and avoidance of the action. It does not admit the allegation in the complaint that the property belongs to the plaintiff, but denies it, and throws the burden of proof on the plaintiff. *Simcoke* v. *Frederick* (1848), 1 Ind. *54; *Landers* v. *George* (1872), 40 Ind. 160; *Riddle* v. *Parke* (1859), 12 Ind. 89; Woollen, Spec. Proc., §2407.

Upon a trial of the cause there was evidence to the effect that in 1906 appellant arranged with appellee to purchase wool during the season, appellant to furnish the money from time to time, as needed, appellee to purchase, store, sack and load the same on board the cars for shipment, appellee to have one cent a pound for each pound so purchased and handled; that appellee purchased a large quantity of wool under this agreement, amounting to 61,537 pounds, or six carloads in all, the same being stored in appellee's warehouse as bought; that in July appellee ordered from the railroad company the cars in which to pack and ship said wool, telling the agent at that time that he did not want a car of the wool to go forward without his instructions; and while the servant of appellee was hauling the wool from the warehouse of appellee and loading it into the cars, appellee instructed him to tell the agent of the railroad company that he must hold the loaded cars until he (appellee) gave orders to send them out. This instruction the servant delivered. While the wool was being sacked and loaded, appellant, without the knowledge of appellee, had bills of lading made out consigning the wool to a firm in Boston. These bills were never delivered to appellant, the agent refusing to give them up without the consent of appellee. After the wool was sacked, weighed and placed on board the cars ready for shipment, appellant and appellee undertook to arrive at a settlement. There was a wide difference between them as to the amount due, appellant admitting that the sum of $2,516.96 was due to appellee, and appellee claiming a much larger amount. Appellee refused to allow any of the cars to be moved until their differences were ad-

justed. Thereupon appellant left, and on the following day remitted to appellee the sum of $2,516.96, the amount appellant admitted was due. Appellee then released five cars, but held the one in controversy, insisting on his right so to hold said wool until a full settlement was made.

The jury returned a verdict in favor of appellee, and with its general verdict returned answers to numerous interrogatories. Appellant moved for judgment on the answers to interrogatories and for a new trial, which motions were overruled. These rulings are assigned as error. Under the first assignment, appellant contends that by the answer to the fourth interrogatory he was entitled to judgment. By this interrogatory the jury was asked to set out the terms of the contract between the parties, and it answered as follows: "That said defendant should purchase wool for plaintiff during the wool season of 1906, at the city of Angola, Indiana, and vicinity; that plaintiff should furnish said defendant with money to make such purchase from time to time as required by said defendant; that said plaintiff should furnish sacks for said wool; that for his services for purchasing said wool, storing, sacking and delivering the same on board the cars as aforesaid, the defendant Appleman should receive as compensation one cent a pound for said wool so purchased." Appellant earnestly insists that the language, "and delivering the same on board the cars as aforesaid," must be construed with the language of the third interrogatory, and thus construed it would read: "And delivering the same to plaintiff on board the cars at the depot for shipment." But the jury, in answer to the third interrogatory, expressly denied the contract as therein expressed, and of which the words last quoted form a part. We cannot say that the word "aforesaid," used by the jury in the fourth interrogatory, refers to the manner of delivery or to purchasing, sacking or storing, as described in the third interrogatory, or that it refers to it in any way,

since it was wholly denied. Under our practice, we cannot draw inferences in aid of answers to interrogatories, and all doubts as to their meaning will be resolved in favor of upholding the general verdict. *Cleveland, etc., R. Co.* v. *Miller* (1905), 165 Ind. 381; *City of Mishawaka* v. *Kirby* (1904), 32 Ind. App. 233; *Smith* v. *Michigan Cent. R. Co.* (1905), 35 Ind. App. 188.

But if the answer might be construed to mean that it was part of appellee's contract to deliver the wool to appellant on board the cars for shipment, in our view of the case this would not be in irreconcilable conflict with the general verdict. The lien of appellee is claimed for both unpaid purchase money and commission. It is conceded that the money to purchase the wool, under the terms of the contract, was to be paid to appellee from time to time, as the wool was bought. Payment of money thus expended became due therefore without reference to delivery. But a finding that appellee was to deliver the wool to appellant on board the cars, and a finding that he had so delivered it, would not necessarily defeat appellee's lien for commissions. No time was specified for the payment of appellee's commissions, so it must be presumed that payment thereof was to be made at the time of delivery—the completion of the contract. *Lane* v. *Old Colony etc., R. Co.* (1859), 14 Gray (Mass.) 143; *Haskins* v. *Warren* (1874), 115 Mass. 514; *Lanman* v. *McGregor* (1884), 94 Ind. 301; *Perrine* v. *Barnard, supra.*

In such case, a delivery may be sufficient to pass title to the vendee, and yet be upon an implied condition of payment; and upon failure of this condition the right of possession of the party making the delivery will remain unimpaired. If A sells to B a horse for cash, and leads the horse out into the highway and places the halter by which he is leading the horse in the hands of B and demands his pay, and B refuses, surely no one would contend that A might not retake possession of his horse. In

the case of *Lane* v. *Old Colony, etc., R. Co., supra,* the court say: "Where two acts are to be done simultaneously, under a contract, the obligation to do each is dependent upon the performance of the other, and each is done upon the implied condition that the other shall be done likewise. The plaintiffs, in the absence of express agreement or regulation, might say that they would not pay their money until they received their goods; and the defendants, that they would not deliver the goods until they had received their money. If the goods were, as in this case, not capable of instantaneous delivery, it would be impossible to perform the contract unless one or the other should begin. And we think the one who begins loses none of his rights by so doing, in the absence of evidence that he has agreed to waive them."

But, in the case before us, the jury found, in answer to interrogatories, that while the wool was delivered on the cars for the appellant, and that appellant was the owner, it also found that appellee retained the possession. Such answers were not in irreconcilable conflict with the general verdict, if it was proved, as there was evidence to prove, that appellee clearly evidenced his intention of preserving his lien when he ordered the cars, by stipulating that they should be under his control, and while he was loading them by reasserting his control, and thereby expressing his intention to perform his contract and make delivery, but retaining control, for the purpose of his lien, until his claims were paid. This he had the legal right to do. *Walls* v. *Long, supra; Allen* v. *Spencer, supra; Holderman* v. *Manier, supra; Chadwick* v. *Broadwell* (1873), 27 Mich. 6; *Perrine* v. *Barnard, supra;* Mechem, Agency, §678; 1 Jones, Liens (2d ed.), §§810, 821, 998, 999.

Appellant insists that the contract shown by the answers to interrogatories is inconsistent with the lien asserted by appellee. It is the law that a common-law lien cannot be acquired where such lien would be inconsistent with the terms of the contract between the parties.

*Tucker* v. *Taylor* (1876), 53 Ind. 93; *Chandler* v. *Belden* (1820), 18 Johns. *157, 9 Am. Dec. 193; *Randel* v. *Brown* (1844), 2 How. 405, 424, 11 L. Ed. 318.

But in the contract before us no such inconsistency is shown. As we have heretofore seen, repayment of money advanced was due as the same was expended, and 12. payment of commissions was due at delivery. Neither was inconsistent with a lien. This contract is not to be confused with a contract where payment is to be made at a time subsequent to a delivery. In such case, the rule is that the agreement of such subsequent payment relinquishes the right to the lien, it being inconsistent therewith. 1 Jones, Liens (2d ed.), §1002; *Wilds Laundering Co.* v. *Hahlo* (1887), 105 N. Y. 234, 11 N. E. 500, 59 Am. Rep. 496. And such are the cases cited by appellant on this point. They are thus clearly distinguishable from this case. Here the delivery and payment of commissions were to be, in contemplation of law, simultaneous; but, in fact, could not be so. One party had to perform first. Both had to be ready to perform, and the one that moved first should not be held to suffer thereby.

Appellant also contends that, by the answers to interrogatories, it appears that appellee did not claim a lien on the wool at the time he refused to let it be shipped. In 13. answer to an interrogatory the jury found that appellee did tell appellant or his attorney that he claimed a lien on the wool for money advanced and commissions due. By answers to subsequent interrogatories, the jury found that appellee, in reply to a request by appellant that the wool go forward, said: "No; I will not settle that way." Aside from explanations afforded by the evidence, this statement establishes nothing. But it appears from the evidence that this statement was made after appellant had figured up the amount the wool came to under his construction of the contract, and informed appellee of the

same. Appellee contended the amount was too small, and in connection with this controversy over the settlement the statement before quoted was made. There is nothing in the answers to interrogatories or in the evidence to indicate that appellee was claiming title to the wool, or that he was holding it as owner. On the contrary, both clearly show that appellee disclaimed ownership, but was holding the property until he got his pay. The case does not come within the rule laid down in *Hanna* v. *Phelps* (1855), 7 Ind. 21, 63 Am. Dec. 410, where it is said that "an unqualified refusal, upon demand duly made, is evidence of a conversion; because it involves a denial of any title whatever in the person who makes the demand." In the same case, the distinction we here make is pointed out in this language: "If the defendants, at the time of the demand, had refused, on the ground of their lien, to part with the property, the law of this case would be clearly in their favor." The answers to the interrogatories are not in irreconcilable conflict with the general verdict.

Objection is made to the giving of instruction one by the court on its own motion. This ruling was not specified as a reason for a new trial, and is therefore not available here. *Young* v. *Montgomery* (1903), 161 Ind. 68; *Kyser* v. *Wells* (1877), 60 Ind. 261.

It is also urged that the court erred in giving instruction eleven requested by appellee. By this instruction the jury was told that even if appellee violated the instructions of appellant in paying more for wool than he was authorized to do, appellee would be entitled to possession until the unpaid purchase price and commissions were paid or tendered. It is urged against this instruction that it enables appellee to profit by his own wrongdoing. Whether the price that appellee was to pay for the wool was fixed by the contract was a matter of controversy between the parties. Appellee contended that it was not, and appel-

lant contended it was. The jury found, in answer to interrogatories, that it was not. The evidence shows that appellant was informed almost every day by written reports and telephone conversations what appellee was paying for the wool he was buying. At no time did appellant repudiate any of these purchases, although he frequently urged appellee to keep down prices. He was present when the wool was sacked, weighed and placed on the cars, and made no objection to the purchases or the prices paid until he came to make the figures for final settlement, and then he did not repudiate the purchase and refuse to take the wool, but, on the contrary, had bills of lading for the wool made out to consignees of his own choosing, and demanded that the wool be delivered to him and shipped as consigned. It thus appears that appellant, with full knowledge of all of the facts, approved the acts of his agent in making the purchases of the wool. It is a general rule that where a principal, with full knowledge of the circumstances of the case, deliberately ratifies the acts of his agent, he will be bound thereby as fully and to all intents and purposes as if he had originally authorized them. Story, Agency (9th ed.), §239. Such ratification cannot afterwards be recalled. Story, Agency (9th ed.), §242. And such ratification will be treated throughout as if it were originally authorized, and will relate back to the time of the inception of the transaction with complete efficacy. "The agent will be entitled to the same rights and remedies, and to the same compensations, and will be subject to the same duties and responsibilities, as if he had been acting within the scope of an acknowledged original authority." Story, Agency (9th ed.), §244. *Hopkins* v. *Mollinieux* (1830), 4 Wend. 465; *Cornwall* v. *Wilson* (1750), 1 Ves., Sr., 509. In the case last cited a merchant in London had an agent in Riga to buy hemp at a stipulated price. The agent exceeded his authority and paid more for the hemp than authorized, and shipped it to his principal.

The merchant objected to the price paid, but received the hemp and resold it, but refused to reimburse the agent for the excess amount. The court held that the merchant, under the circumstances, was not bound to accept the hemp; but, having done so, he was bound to pay the price paid by the agent.

So in this case, appellant was not bound to take any wool purchased at a price in excess of that authorized, and it may be fairly presumed that he could have refused to do so without loss to himself, but we fail to see any equitable principles that would permit him to accept the result of appellee's money and labor and not reimburse him for both. A careful consideration of citations of appellant on this point discloses that none of them are in conflict with our holding.

This is an action for possession, no other question but the right of possession is involved. Under the facts stated, which are undisputed, the instruction was not erroneous. Objections are urged to other instructions but, considering the instructions as a whole, they fairly present the law in such a manner as to be intelligible and not confusing to the jury. *Louisville, etc., R. Co.* v. *Wright* (1888), 115 Ind. 378, 7 Am. St. 432.

Objections are also made to the admission in evidence of statements of appellee and witness Strubble, an employe of appellee, in regard to what was said to the railroad agent when the cars were ordered and when they were loaded. The conversations testified to were had in connection with acts that were themselves admissible in evidence and were explanatory thereof. They were therefore admissible as part of the *res gestœ. Baker* v. *Baker* (1909), 43 Ind. App. 26; *Creighton* v. *Hoppis* (1885), 99 Ind. 369.

Appellant also contends that the court erred in refusing to admit a letter that passed between appellee and appellant

three or four days after appellee had refused to let the car of wool in controversy go forward. It is clear the letter was written to effect a compromise, and for no other purpose, and contained no admission of an independent fact as a fact, and for this reason it was inadmissible. *Louisville, etc., R. Co.* v. *Wright, supra,* and cases cited

Finally, appellant insists that the evidence is insufficient to support the verdict. This contention is not sustained by the record. We find no reversible error.

Judgment affirmed.