CENTRAL OF GEORGIA RAILWAY CO. *v.* JAMES.

1. On the trial of an action sounding in tort, brought against a railway company with a view to recovering damages sustained by the plaintiff because of its failure to safely transport live stock which he in his petition alleges he delivered to it for shipment, it is competent for him to show that delivery to the carrier was made by him through an agent, notwithstanding such agent made the shipment in his own name as owner, without disclosing to the company the fact that he was acting for and in behalf of the plaintiff.  It follows, however, that as the plaintiff thus predicates his suit upon a breach of duty arising out of the contract made by his agent, the former is bound by its terms, irrespective of the question whether the agent was or was not authorized to enter into a contract of that character.

2. A shipper of live stock can not justly complain that a carrier failed to give needful attention thereto while in transit, when, notwithstanding he agreed, in consideration of a reduced freight rate and free transporation for himself or agent, to take charge of and care for the animals during their journey, he did not himself accompany them or procure another to do so.

3. When, in an action such as the present one, the plaintiff does not allege that the carrier was negligent in not transporting his stock with due dispatch, proof that there was unusual delay in the transportation and that the company was requested to hasten the shipment is wholly irrelevant and inadmissible.

4. In view of the terms and stipulations of the special contract upon which the prevailing party in the trial court relied as furnishing a basis for his suit, the evidence offered in his behalf did not warrant a finding in his favor on the theory that the company was negligent in furnishing him with a car which was unsuitable and defective.

Argued June 8, — Decided June 27, 1903.

Action for damages.    Before Judge Sheffield.    Early superior court.    October 8, 1902.

*W. W. Bacon Jr.* and *A. G. Powell*, for plaintiff in error, cited 71 *Ga.* 61; 87 *Ga.* 463; 91 *Ga.* 377; 110 *Ga.* 659; 115 *Ga.* 361, 705; 75 *Ga.* 786; 113 *Ga.* 514; Civil Code, §§ 3019, 3021, 3032, 5243; 112 U. S. 331, 28 L. ed. 717; 6 Cyc. 400.

*R. H. Sheffield*, contra, cited Civil Code, § 2896; 66 *Ga.* 492; 88 *Ga.* 813; 93 *Ga.* 810; 95 *Ga.* 452; 110 *Ga.* 659; 36 *Ga.* 646; 5 Am. & Eng. Enc. L. (2d ed.) 458.

SIMMONS, C. J. An action for damages was brought by D. W. James against the Central of Georgia Railway Company, the plaintiff alleging in his petition that on December 27, 1900, he delivered to the defendant carrier, in the city of Atlanta, a car-load of mules to be shipped over its line to Blakely, Ga.; that while the mules were in transit, one of them "kicked through the door of the car in which they were being so transported, and was unable to draw its foot back, and, although the foot of said mule was fully exposed to view to the servants and agents of said company passing by and around said car, the said mule remained in the condition aforesaid until the same was delivered to the petitioner in Blakely," and within four days thereafter died from the injuries it received. The company was charged with negligence in that it failed "to provide a car with a sound and suitable door and one sufficiently thick and strong to have avoided injury by the stock to themselves," and also with neglect in not giving attention to the mule after it had so caught its foot and had fallen in a helpless condition upon the floor of the car. The company set up the defense that the carload of mules had been shipped at a reduced rate of freight under a special contract by the terms of which it was absolved from all liability to account to the plaintiff for the value of the mule which had been injured in transit. He subsequently amended his petition by alleging that "the freight was not agreed upon nor paid until after the said mules had arrived in Blakely, the end of their destination." The case was tried upon the issue thus raised, the trial resulting in a verdict for the plaintiff. The company made a motion for a new trial, based on divers grounds; but its motion was overruled, and it excepted.

1. The plaintiff was permitted, over the objection of counsel for the company, to testify that the stock had been delivered to it in Atlanta by the proprietors of the Brady-Miller Feed & Sale Stables, under an arrangement whereby they were to act as his agents in making the shipment. The objection urged against this testimony was that the plaintiff in his petition alleged he had made the delivery to the company, whereas "the written contract of shipment which had been produced in court by the plaintiff under notice showed on its

face that this stock was not delivered to [the defendant] by plaintiff,. but by the Brady-Miller Feed & Sale Stables, of Atlanta, who signed the contract as owners without revealing that plaintiff was interested in the shipment except as consignee and person in charge of the stock." We think the testimony was properly admitted. The action sounded in tort, and it was permissible for the plaintiff to show that, by virtue of a contract of shipment made in his behalf by his authorized agents, the company owed him a duty as a common carrier to transport the stock to destination in accordance with its undertaking thus assumed. In other words, proof of this contract was competent for the purpose of showing that a relation existed between the plaintiff and the carrier which imposed upon it a. legal duty, as to him, of properly performing its obligations in the premises. It is not essential, in order to create such a relation, that. a shipper should in person deliver freight to a carrier; for the law deems the acts of an authorized agent as those of his principal. Thus, though a consignee be not a party to a contract of carriage between a railway company and a shipper, the consignee may nevertheless make proof of such contract with a view to showing the company became liable to him for a failure to comply with its. legal duty as a common carrier to perform such contract, the same having been made for his benefit. Of course, where the owner of goods does not attend to their shipment in person, but procures another to act in his behalf, who does so without disclosing the name of his principal, the latter is bound by the terms of the contract which his agent makes with the carrier, to the same extent as. though the contract was made by the principal in person, irrespective of the question whether the agent did or did not go outside of the authority with which he was vested. This is true for the all-sufficient reason that the principal can not take advantage of the contract made in his behalf without fully ratifying the act of his. agent and becoming bound thereby.

On the argument here, counsel for the plaintiff in error cited and relied on the case of *Atlanta & West Point R. Co.* v. *Texas Grate Co.*, 81 *Ga.* 602, as sustaining his contention that the testimony objected to was not, in view of the pleadings filed by James, admissible. In that case it appeared that the Texas Grate Company brought suit in the capacity of a consignee to recover damages alleged to have grown out of a failure by the railroad company to

perform a contract of carriage entered into between it and the firm of Withers & Holland, whereby the company obligated itself to deliver certain freight to either the plaintiff or to H. M. Beaty & Co., for the plaintiff. The evidence wholly failed to establish any contract whatsoever to deliver the freight to the Texas Grate Company or to any one as its agent. Indeed, the proof showed that the undertaking of the carrier was "to deliver not only to, but for, H. M. Beaty & Co.," and that the shipper had not even intended to consign the shipment to the plaintiff. This being so, it was necessarily ruled that there was a fatal variance between the allegata and the probata. In the present case it can not seriously be doubted that, in legal contemplation as well as in point of fact, the real shipper was James, the plaintiff, notwithstanding his agents, through whom he acted, did not disclose this fact to the carrier; and, as has already been remarked, it could in no way be prejudiced by a disclosure of what was the truth in this regard, since James must stand or fall upon the contract of shipment made in his behalf, which furnishes the basis of his action, although it sounds in tort. Had he brought suit on the contract, doubtless it would have been necessary to allege his relation thereto as a party, for otherwise his pleadings would indicate that he was attempting to sue for an alleged breach of a contract to which he was apparently a stranger.

The contract under which the stock was shipped was evidenced by a writing which purported to be signed not only by " The Brady-Miller F. & S. Stables, owner or shipper," but by D. W. James as the person " actually in charge of the stock." The plaintiff testified he gave no one authority to sign his name to the contract, but admitted that he was furnished with either the original or a copy of it before he left Atlanta for Blakely, and accepted and used a pass which the company had issued in his name, agreeably to the terms of the writing, in order that he might take passage on the train transporting the mules and take charge of and care for them during the journey. In this connection the trial judge charged the jury: "You will first see if there was any special contract of carriage between the parties, and whether Mr. James, the plaintiff, signed that contract or authorized any one to do so for him. If he made no special contract, then the liability of defendant as common carrier would be the ordinary liability of such carriers, accord-

ing to the rules I have given you in charge." This instruction to the jury was excepted to on the ground that, as the proof showed affirmatively that the shipment was made under a special contract the terms of which varied the common-law liability resting on carriers, the right of the plaintiff to recover depended entirely upon the legal effect of such contract and whether or not the defendant had failed to comply with the obligations it thereby assumed. The point is well taken. That the agents of the plaintiff executed this writing was an admitted fact. Whether or not they had authority to sign his name thereto was wholly immaterial. Independently of this written contract of carriage, he had no dealings with the company or any right to assert that he was the true owner and shipper of the stock and, as such, the proper person to maintain against it an action for damages because of its alleged failure of duty as a carrier. If his agents acted beyond the scope of their authority in entering into this special contract, he must look to them for any loss sustained by reason of their breach of duty to him in not making in his behalf a contract with the company such as he authorized. He can not rely on the contract actually made, without unreservedly ratifying the acts of his agents in entering into the same and becoming bound by all its terms and stipulations, in so far as they have legal force and effect. We shall accordingly, in our further discussion of the case, deal with this contract as though he had made it in person, instead of through agents.

2. The evidence did not, in our opinion, warrant a finding that the trainmen might, had they used all proper diligence in looking after and caring for the plaintiff's stock, have prevented or lessened the injuries to the animal which caught its foot in the car-door by taking prompt measures to extricate it. But however this may be, the plaintiff was not in a position to assert that the company was under any duty to him to watch over and care for his stock while in transit. On the contrary, under the express terms of his special contract the company was relieved of any such duty, the shipper agreeing, in consideration of the reduced freight rate and the furnishing to him of a free passage for himself or agent, to either personally accompany the stock and look after the comfort and welfare of the animals, or to provide a servant to do so for him. He did neither, but took passage from Atlanta to his desti-

nation on a passenger-train, thus assuming the risk of injury to his stock from lack of attention during the journey.

3. Over timely and proper objection interposed by the defendant's counsel, the court allowed the plaintiff to prove that the train on which his stock was shipped was delayed several hours in Arlington, an intermediate station between the point of shipment and Blakely, and did not arrive at the place last mentioned until after seven o'clock in the evening, although due to arrive at that station between one and three o'clock p. m. Also, that the plaintiff requested the agent at Arlington to wire the superintendent to have the car-load of stock sent through to destination on a passenger-train, and that the plaintiff himself sent a telegram to the company's superintendent, in which a request was made that this be done on account of bad weather. As will have been noted, the plaintiff did not in his petition allege that the company was negligent in that it did not transport his stock with due dispatch, and that its failure to do so brought about or contributed to the injury of the mule for the value of which he brought suit. A plaintiff is entitled to recover, if at all, only on proof of the case made by his pleadings. *Central Railroad Co.* v. *Avant*, 80 *Ga.* 195.

4. The only remaining question with which it is necessary we should deal is whether or not the plaintiff sustained his contention that the carrier was liable because it failed "to provide a car with a sound and suitable door and one sufficiently thick and strong to have avoided injury by the stock to themselves." The evidence disclosed that the car furnished by the company was of standard make and in a perfectly sound condition. "The door to this car was of slats about 3/4 of an inch thick and 4 or 5 inches wide. . . The space between them was about 1 3/4 inches, possibly 2 inches. There was a piece across the door at the top, one in the center, and one at the bottom. The door was about six feet, two or three inches high." There was "an indentation on one of the slats which looked like it might have been made by a horse kicking. The mule could not have gotten his foot through that high without great force. His foot was hung about 3 1/2 or 4 feet in the door above the floor." None of the slats were broken. They were not "very elastic," though those between which the mule's foot was hung had evidently sufficiently "sprung" to admit the passage of the animal's hoof. The space between these slats was, by actual

measurement with a rule made after the mule had forced his foot through the opening, " 1 3/4 inches at the bottom and 2 inches at the top." The mule's foot was released, after the train arrived at Blakely, by inserting a crowbar between the slats and " springing" them sufficiently to enable the animal's foot to be extricated. In view of this evidence, it is clear that the primary cause of the injury to the mule was its own inherent viciousness, against liability for the consequences of which the defendant company specially contracted with the plaintiff. The contract between them also recited that the shipper had examined the car provided by the carrier and found it in good order and condition, and that he had accepted the same as suitable and sufficient for the purpose intended. A shipper who enters into such an agreement must be held to waive all defects in the car furnished him, save such only as are latent and therefore not readily discoverable by him. The defect, if any, in the car provided by the company for the transportation of the plaintiff's stock was patent, and might easily have been seen upon even a casual inspection of the car. Indeed, as to this point, the present case is controlled by the recent decision announced by this court in *Williams* v. *Central R. Co.*, 117 *Ga.* 830 wherein it was held that a shipper who was a party to a special contract such as that appearing in the record now before us was not entitled to prevail in an action for damages for the loss of a mule which got its foot hung between the slats of a stock-car, when the shipper relied for a recovery upon evidence which showed " merely that the crack into which the animal got its foot was the space between the slats of the car, some 3 1/2 or 4 feet above the floor thereof." We accordingly hold that the verdict returned in the present case was without any evidence to support it.

*Judgment reversed.   All the Justices concur.*