*W. C. Cousins, J. W. & J. D. Humphries,* and *A. O. Blalock,* contra.

---

## SOUTHERN RAILWAY COMPANY *v.* TOLLERSON.

1. Where in an action for damages to live stock which were. shipped over a line of railways, and some of which were alleged to have been injured by negligence in failing to properly care for, feed, and water them, the jury found for the plaintiff $500, and the presiding judge overruled a

motion for a new trial unless the plaintiff would write off from the verdict the sum of $100, which was done and a new trial refused; and where it did not appear from the evidence that the plaintiff was entitled to recover the sum thus reduced, or that a sum could be accurately ascertained to be written off from the verdict and leave the balance to stand as a lawful finding, such ruling was erroneous.

2. If live stock were shipped under a valid written contract providing that the shipper or his agent should accompany the animals transported and should feed and care for them at his own expense, provided that upon his failure to do so the railroad company might feed and care for them at the expense of the owner, a failure on the part of the shipper to comply with such contract was a default on his part, and he could not recover for damages arising therefrom; nor could the consignee who relied on such contract as having been made for him.

3. If such animals were shipped from one State to another, and, on default of the owner or shipper to comply with a valid special contract of shipment of the character indicated in the preceding headnote, it was necessary for one of a line of connecting railroads to feed and water the stock, under § 4387 of the Revised Statutes of the United States, the fact that this was done, and that the last of the line of connecting carriers presented a bill for the amount of expenses so incurred to the consignee, who paid it, did not constitute a waiver of the provision of the contract in regard thereto.

AUGUST 13, 1910.

Action for damages. Before Judge Reagan. Henry superior court. June 28, 1909.

H. M. Tollerson brought suit against the Southern Railway Company, and alleged in brief as follows: Through his agent he had delivered a car-load of live stock to the defendant at Shelbyville, Kentucky, to be shipped to McDonough, Georgia, on December 12, 1905. The stock consisted of mules and horses, and when delivered to the railroad company they were in good condition, but when delivered to the plaintiff at McDonough they were famished, depleted, exhausted, and damaged by reason of a lack of food, water, and proper care while en route. The jury found for the plaintiff five hundred dollars. The defendant moved for a new trial. The court overruled the motion, provided the plaintiff would write off from the verdict a hundred dollars. This the plaintiff did, and the defendant excepted.

*N. E. & W. A. Harris,* for plaintiff in error.

*Brown & Brown,* contra.

LUMPKIN, J. When this case was before the Supreme Court on a former occasion, it was held that the stipulation in the contract for the shipment of live stock, requiring "that, as a condition pre-

cedent to any right to recover any damages for loss or injury to said live stock," written notice of a claim therefor shall be given "before said live stock is removed or is intermingled with other live stock," was reasonable and valid, and that the evidence failed to show that the shipper complied with such stipulation. The judgment in favor of the plaintiff was accordingly reversed. *Southern Railway Company* v. *Tollerson,* 129 *Ga.* 647 (59 S. E. 799). When the case was again tried, some additional evidence was introduced. It is not necessary to discuss the meaning of the expression "before said live stock is removed," whether this means a removal from the car, or a removal from the custody of the railroad, or a removal from the place of destination, as in *Southern Railway Company* v. *Adams,* 115 *Ga.* 705 (42 S. E. 35) ; or whether an agreement requiring written notice before removal of stock from a car would be reasonable, at least as applicable to injuries not patent and discoverable before such removal. The suit was for $830, and the jury found a verdict for $500. The presiding judge refused a new trial, provided the plaintiff would write off from the verdict a hundred dollars, which was done, and a new trial was thereupon denied. We have not ascertained from the evidence how the presiding judge arrived at the sum of a hundred dollars which should be written off from the verdict, or why the verdict was improper for that amount and not as a whole; nor have the briefs of counsel shown us how this amount was arrived at. *Seaboard Air-Line Railway* v. *Randolph,* 129 *Ga.* 796 (59 S. E. 1110) ; *Seaboard Air-Line Railway* v. *Bishop,* 132 *Ga.* 71 (63 S. E. 1103).

The special written contract made in regard to shipment of the live stock contained the following provisions: "That he [the shipper] will load and unload said animals at his own risk, and feed, water, and attend the same at his own expense and risk while they are in the stockyards of the railway company awaiting shipment, and while on the cars, or at feeding or transfer points, or where they may be unloaded for any purpose, whether arising from accident or delay of trains, or otherwise, and to that end he or his agent in charge of said live stock shall pay regular published passenger fare when proper under rules governing transportation of live stock, and shall ride upon the freight-train in which said animals are transported; and in case the railway company shall fur-

nish laborers to assist in loading and unloading or caring for said live stock, they shall be subject to the orders and shall be the employees of the party of the second part while so assisting: Provided, however, that in the event that the party of the second part shall fail to properly care for, feed, or water the said live stock during transportation, the railway company may itself care for, water, and feed the same at the expense of the owner thereof, and shall and may have a lien upon the said live stock for the amount of its expenditures in that respect." The damages sought to be recovered were claimed to have arisen from lack of proper care, feeding, and watering of the stock during transportation. It did not appear that the plaintiff or his agent or any one representing him accompanied the stock or sought to feed and water them, or that the railway company did not furnish ample facilities and opportunities for that purpose. It has been held in this State that such a contract, based on a reduced rate, is valid. *Central Railroad* v. *Bryant*, 73 *Ga.* 722; *Cincinnati &c. Railway* v. *Disbrow & Co.*, 76 *Ga.* 253; *Boaz & Co.* v. *Central Railroad Co.*, 87 *Ga.* 463 (13 S. E. 711); *Central Railway Co.* v. *James*, 117 *Ga.* 832 (45 S. E. 223). There was nothing to show that the contract was not valid where made.

By section 4386 of the Revised Statutes of the United States it was declared, that, in interstate shipments of live stock, they should not be confined in the cars for a longer period than twenty-eight consecutive hours (by amendment changed to thirty-six, upon written request of the owner or person in charge: 34 U. S. St. L. 607 (U. S. Comp. St. Supp. 1909, p. 1178)) "without unloading the same for rest, water, and feeding, for a period of at least five consecutive hours, unless prevented from so unloading by storm or other accidental causes." Section 4387 reads as follows: "Animals so unloaded shall be properly fed and watered during such rest by the owner or person having the custody thereof, or, in case of his default in so doing, then by the railroad company or owners or masters of boats or vessels transporting the same at the expense of the owner or person in custody thereof; and such company, owners, or masters shall in such case have a lien upon such animals for food, care, and custody furnished, and shall not be liable for any detention of such animals." By section 4388 it was declared that "Any company, owner, or custodian of such animals, who knowingly and willingly fails to comply with the provisions of the two

preceding sections," shall be liable to a penalty of not less than $100 or more than $500. It will be noticed that these sections seem to contemplate that the owner or person having the custody of the live stock may be under a duty to feed and water them, and that the railroad company must do this "in case of his default in doing so." If by a valid contract the shipper undertakes to accompany the stock himself or have some person accompany them as his agent, and to feed and water them, and the railroad company furnishes him with facilities and opportunity for that purpose, he can not violate his contract, and yet claim not to be in default. 4 Elliott on Railroads (2d ed.) 1554; Missouri Pac. Ry. Co. *v.* Texas & Pac. Ry. Co., 41 Fed. 913; Fort Worth etc. Ry. Co. *v.* Daggett, 87 Tex. 322 (28 S. W. 525). This shipment was prior to the act of Congress of 1906, commonly called the Hepburn act; and it is therefore unnecessary to consider the effect of that act.

The presiding judge recognized the general principle here announced, but charged the jury as follows: "That part of the contract, gentlemen, requires that Mr. Tollerson or his agent look after, feed and water, and care for the stock en route, and to that end he should have accompanied them, riding on the same train on which they were transported. If they failed to do that, and the stock was damaged by reason of that failure to feed and water them, then he would not be entitled to recover at all, unless you find that stipulation in the contract was waived by the railroad company." There was no evidence from which the jury would have been authorized to find that there was such a waiver, or on which to submit that question to them. The Revised Statutes of the United States above cited required the railroad company to feed and water the stock in default of the owner's doing so, and at his expense. This was a shipment from Kentucky to Georgia. At some point along the line of connecting railroads it was claimed that an expense was incurred for feeding and watering the animals shipped. Upon their arrival, the defendant presented to the plaintiff a bill for such expense, which the latter paid. It did not appear that the plaintiff complied with his contract in respect to the matter of having the stock accompanied and cared for, but, on the contrary, it is plainly inferable from all the evidence that he did not do so. If by his own default he rendered it necessary for one of the connecting lines of railroad to feed the stock en route, and paid the expense

so incurred, this did not amount to a waiver of that provision of the contract on the part of each of the railroad companies constituting the through line.

From what has been said it is apparent that, under the evidence, the jury erred in their finding, and that the court erred in refusing to grant a new trial.

*Judgment reversed. Beck J., absent. The other Justices concur.*