## CHICAGO, INDIANAPOLIS AND LOUISVILLE RAILWAY COMPANY ET AL. *v.* PRIDDY ET AL.

[No. 9,072. Filed February 23, 1917. Rehearing denied June 22, 1917. Transfer denied November 2, 1917.]

1. APPEAL.—*Term-Time Appeal by One of Several Codefendants.—Notice to Appellees.—Rules of Court.*—Where one of several codefendants assigned error on the transcript filed in a term-time appeal by a coparty, but failed to perfect a term-time appeal, and did not serve notice of its appeal on appellees, who had entered no appearance, within ninety days after the filing of the transcript, and no excuse was offered for such

failure to observe Rule 36 of the Appellate Court, relating to notices in vacation appeals, the court will not relieve appellant from the enforcement of such rule on the ground that the failure of its observance was due to excusable accident, mistake, or oversight. pp. 557, 558.

2. COURTS.—*Rules.—Force and Effect.*—Court rules have the force and effect of law, and the duty to observe and follow them rests on litigants and courts alike, where there is no valid reason for their nonobservance. p. 558.

3. APPEAL.—*Vacation Appeal by One of Several Codefendants.—Notice.—Statute.*—Under §675 Burns 1914, Acts 1895 p. 179, providing that whenever a party, or any number of coparties against whom a judgment has been taken, shall appeal under §638 R. S. 1881, providing for term-time appeals, it shall not be necessary to make coparties parties to the appeal, but they shall be bound by the judgment on appeal as if made parties, and that, after any such appeal has been perfected, any coparty not joining therein may, while such appeal is pending, and within one year from the date of final judgment, assign errors for himself upon the record, and that he shall have all the rights, in relation to such appeal, that he would have had, had he joined in the appeal originally, a coparty assigning error on the transcript but not perfecting a term-time appeal is not relieved of giving to appellees the notices required to perfect a vacation appeal. pp. 559, 561.

4. STATUTES.—*Construction.*—In construing a statute, its several provisions must be read together, and such construction given it, if possible, as will be consistent with all its provisions. p. 561.

5. CARRIERS.— *Carriage of Freight.— Contract.— Scope.— Connecting Carriers.*—Where a consignment of freight is transported over several lines, the provisions of the contract entered into by the initial carrier are, if valid, for the benefit of the connecting carriers as well as the initial carrier, and such provisions must control the shipment. p. 570.

6. CARRIERS.—*Carriage of Freight.—Limitation of Liability.—Negligence.*—A carrier cannot by contract or otherwise exempt itself from liability for its negligence or that of its servants. p. 570.

7. CARRIERS.—*Carriage of Live Stock.—Negligence.—Liability of Carrier.*—Though a special contract under which a carload of mules was shipped imposed upon the shipper the duty of accompanying and caring for the stock while being transported, such contract, upon the shippers being refused permission to accompany the shipment, did not relieve the carrier, or any of its connecting lines, from liability for injury result-

ing from negligent failure to properly care for, feed and water the mules while enroute, since a carrier cannot exempt itself from liability for its own negligence.   p. 570.

8.   CARRIERS.—*Carriage of Live Stock.—Contract.—Limitation of Liability.*—Where a carrier refused to permit a shipper to accompany a shipment of live stock for the purpose of caring for and feeding the same while enroute, the carrier cannot urge as an excuse for its failure to give the stock proper care, and as evidence of its reasonable and ordinary care in that respect the fact that such duty was assumed by the consignors under a special contract governing the shipment.   p. 573.

9.   CARRIERS.—*Carriage of Live Stock.—Value Fixed by Contract.—Effect.*—An agreement on values in a special contract governing a shipment of live stock only has the effect of limiting the amount of the carrier's liability to the stipulated value, and does not require that in case of loss the damage assessed should be for such portion of the real loss as the agreed value sustained to the actual value.   p. 574.

10.   APPEAL. — *Questions   Presented. — Excessive   Damages. — Briefs.*—In an appeal from a judgment for injury to a carload of live stock while in shipment, a contention that an item of damages was doubly assessed is not properly presented by appellant's briefs under the heading "Error in. Conclusions of Law," nor is the question presented for review by a ground of the motion for a new trial alleging excessive damages, where such ground is not referred to either in appellant's points and authorities or in its brief under the heading "Error in Overruling Motion for New Trial."   p. 574.

11.   CARRIERS.—*Carriage of Live Stock.—Evidence.—Admissibility.*—In an action against several railroads for injury to live stock while in shipment, where defendants contended that the special contract under which the shipment was made required the shipper to accompany and care for the consignment, evidence as to the initial carrier's refusal to permit the shipper to accompany the stock was admissible to explain his failure to do so.   p. 575.

12.   APPEAL.— *Review.— Harmless Error.— Admission of Evidence.*—In an action against several railroads for injury to live stock while in shipment, where defendant connecting carrier's liability was fixed by reason of the fact that it accepted the stock knowing that it was unaccompanied and negligently failed to care for it, the question of the refusal of the initial carrier to permit the shipper to accompany the stock was immaterial, so that error, if any, in the admission of evidence relative to the initial carrier's refusal to allow the shipper to accompany the stock was harmless.   p. 575.

13. CARRIERS.— *Carriage of Live Stock.— Contract.— Construction.—Injury to Stock.—Notice of Claim.*—A provision in a live stock shipping contract for notice to the carrier of a claim for damages before the removal of the stock and before it is mingled with other stock to be valid must be reasonable, and should be given a reasonable construction in view of the facts of each particular case. p. 575.

14. CARRIERS.—*Carriage of Live Stock.—Injury to Stock.—Notice of Claim.—Compliance with Shipping Contract.*—In an action for injury to a carload of mules while in shipment, where the evidence showed that an agent of the delivering carrier was present when the mules were removed from the car and saw their condition, which required immediate attention, and which did not reveal the extent of their injury, and seven days after delivery the agent of the delivering carrier was served with a written notice containing an itemized statement of plaintiff's claim, there was a sufficient compliance with a stipulation in the contract of shipment requiring the giving of a written notice of a claim for damages before the removal of the stock from the carrier's premises and before it is mingled with other stock. p. 576.

From Huntington Circuit Court; *David E. Smith,* Special Judge.

Action by John L. Priddy and others against the Chicago, Indianapolis and Louisville Railway Company and others. From a judgment for plaintiffs the defendants, except the Louisville and Nashville Railroad Company, appeal. Appeal of Wabash Railroad Company dismissed. *Affirmed.*

*Stuart, Hammond & Simms, Watkins & Butler, E. C. Field, H. R. Kurrie, C. C. Hine* and *Perry McCart,* for appellants.

*E. C. Vaughn* and *Lesh & Lesh,* for appellees.

HOTTEL, C. J.—On January 22, 1915, appellees appeared specially in this cause and moved to dismiss the appeal as to the Wabash Railroad Company. The motion to dismiss contains seven grounds presenting in different form the question of the jurisdiction of the court over appellees as to any matter presented by the appeal between appellees and the said appellant Wabash

Railroad Company, because of the failure of such appellant to perfect its appeal in either of the methods prescribed by statute.

The facts on which the motion is based, as disclosed both by the motion and the record, are substantially as follows: The finding below was in favor of the appellees against the Chicago, Indianapolis and Louisville Railway Company and Wabash Railroad Company, and against appellees as to the Louisville and Nashville Railroad Company. The motion to dismiss the appeal is against the Wabash Railroad Company alone, and for the purposes of its consideration, the Chicago, Indianapolis and Louisville Railway Company and the Wabash Railroad Company alone will be treated and referred to as the appellants, and when the word "appellant" is used herein in the singular it will refer to the Wabash Railroad Company, unless otherwise designated. On June 17, 1914, after such trial and finding by the court below, the appellants each filed a separate motion for new trial, and they also filed a joint motion for new trial. On the same day each of these motions was overruled and judgment rendered in favor of appellees against appellants. From this judgment the appellant Chicago, Indianapolis and Louisville Railway Company prayed an appeal. The usual order granting the appeal was made, in which time for filing bill of exceptions and the amount of the bond were fixed, and the sureties named and approved all in accord with the statute providing for a term-time appeal. On July 14, 1914, and within the time given by the court, the Chicago, Indianapolis and Louisville Railway Company filed its appeal bond. This bond is set out in the record, and in all respects complies with the court's order, except that it is the bond of such company alone, and by its terms neither the principal nor sureties therein are held and bound to the payment of any judgment ex-

cept that which may be rendered against such Chicago, Indianapolis and Louisville Railway Company. On September 11, 1914, a transcript of the record in said cause was filed in this court, in which both of said judgment defendants below are named as appellants, and each of such appellants separately assign error thereon. After the filing of the transcript, and prior to the filing of appellees' motion to dismiss the appeal, no notice of any kind was served on either of appellees or their attorneys, or on the clerk of the court below, and appellant made no request of any kind on the clerk of this court for a notice of any kind to appellees or either of them or to their attorneys, and no notice of any kind was in fact issued by such clerk. Appellant took no steps of any kind to serve notice of its appeal on appellees or their attorneys, or to perfect its appeal in either of the modes prescribed by statute other than herein indicated, and appellees prior to their special appearance to dismiss the appeal have never entered any appearance to such appeal.

It will be seen from this statement of the record that appellant failed to perfect a term-time appeal, that, after the filing of the transcript herein, it allowed ninety days to go by without taking any steps of any kind to serve any notice of its appeal on appellees, and that 180 days intervened between the rendition of the judgment below, and the filing of appellees' motion to dismiss the appeal. Appellant, in effect, concedes that under a strict construction of Rule 36 of this court and under the authority of the case of *Cincinnati, etc., R. Co.* v. *Acrea* (1906), 40 Ind. App. 150, 81 N. E. 213, its appeal must be dismissed.

It is insisted, however, in effect that the enforcement of Rule 36 is, in a measure, discretionary with the court, and that the ends of justice are not met by its rigid enforcement, where the failure of its observance is due

to accident, mistake, or oversight of the appealing party or his attorneys. In support of this contention appellant cites *Smythe* v. *Boswell* (1888), 117 Ind. 365, 20 N. E. 263; *Tate* v. *Hamlin* (1897), 149 Ind. 94, 41 N. E. 356, 1035; *Hanley* v. *Mason* (1907), 40 Ind. App. 180, 81 N. E. 610; *Bank of Westfield* v. *Inman* (1892), 133 Ind. 287, 32 N. E. 885; *Hutts* v. *Martin* (1892), 131 Ind. 1, 30 N. E. 698, 31 Am. St. 412; Ewbank's Manual (2d ed.) §160. These cases do not support appellant's contention. On the contrary, they each, either expressly or impliedly, hold that the mistake which will relieve an appellant from the enforcement of Rule 36, *supra,* must be one of fact, and that the oversight or neglect which will afford such relief must be shown to have been excusable. Any other holding would nullify the rule.

No excuse for appellant's failure to observe such rule appears from the record, or is offered in this case, which would not appear from the record in any case where a term-time appeal had been perfected by one of several coparties against whom a judgment had been rendered in the court below, and another coparty who had not perfected such an appeal assigned error on the transcript filed in this court.

The court rules have the force and effect of law, and the duty to observe and follow them rests on litigants and courts alike, where no valid reason can be given for their nonobservance. *Webster* v. *Bligh* (1911), 50 Ind. App. 56, 58, 98 N. E. 73; *Magnuson* v. *Billings* (1898), 152 Ind. 177, 52 N. E. 803.

In the case of *Cole* v. *Franks* (1896), 147 Ind. 281, 46 N. E. 532, the Supreme Court, in speaking of the enforcement of Rule 36, *supra,* said: "This rule would seem to govern in the case before us. A cause was appealed in vacation, and was placed on the docket June 19, 1896. Not until long after

ninety days from this date, and not until steps were taken by appellees to have the appeal dismissed, did appellants take any steps to bring the appellees into court. It was then too late to give notice; and though the clerk did not enter an order of dismissal when the cause had been on the docket ninety days, yet the court will make such order so soon as its attention is called to the failure of appellants to give timely notice of the appeal." To the same effect, see *Smith* v. *Wells Mfg. Co.* (1896), 144 Ind. 266, 43 N. E. 131; *Shaefer* v. *Nelson* (1896), 17 Ind. App. 489, 491, 46 N. E. 1021; *Court of Honor* v. *Bankert* (1903), 31 Ind. App. 689, 690, 691, 68 N. E. 1039; *Ashley* v. *Henderson* (1903), 32 Ind. App. 242, 243, 69 N. E. 469; *Moore* v. *Bankers' Surety Co.* (1904), 34 Ind. App. 633, 635, 73 N. E. 607; *John V. Farwell Co.* v. *Newman* (1897), 17 Ind. App. 649, 659, 47 N. E. 234; *Doak* v. *Root, etc., Co.* (1900), 26 Ind. App. 138, 141, 142, 58 N. E. 444; *Bechtell* v. *Central, etc., Engineering Co.* (1914), 182 Ind. 568, 107 N. E. 73; *W. C. Hall Milling Co.* v. *Hewes* (1914), 57 Ind. App. 381, 105 N. E. 241; *Fort* v. *White* (1914), 58 Ind. App. 524, 108 N. E. 27; *Tate* v. *Hamlin, supra; Cincinnati, etc., R. Co.* v. *Acrea, supra.*

However, appellant's failure to comply with rule 36 is not the only ground on which appellees predicate their right to have the appeal dismissed as to appellant. They insist that appellant has not perfected its appeal in either of the methods provided by statute, and that 180 days have expired since the judgment was rendered below, and hence that the time within which the law requires an appeal to be taken has expired.

As affecting this question appellant insists that his appeal was perfected when the transcript and assignment of errors were filed in this court. On the question of when a vacation appeal is perfected there is

some confusion in the authorities, as will be evidenced by the following cases. *Tate* v. *Hamlin, supra; John V. Farwell Co.* v. *Newman, supra,* 648; *Hanley* v. *Mason, supra; Bank of Westfield* v. *Inman, supra; Nemitz* v. *State, ex rel.* (1906), 38 Ind. App. 509, 510, 78 N. E. 357; *Harshman* v. *Armstrong* (1873), 43 Ind. 126, 128, 129; *Dougherty* v. *Brown* (1898), 21 Ind. App. 115, 118, 51 N. E. 729; *Smythe* v. *Boswell, supra; Bruiletts Creek Coal Co.* v. *Pomatto* (1909), 172 Ind. 288, 88 N. E. 606; *Hoeger* v. *Citizens' Street R. Co.* (1904), 35 Ind. App. 289, 73 N. E. 1095; *Coburn* v. *Whitaker, etc., Lumber Co.* (1894), 12 Ind. App. 340, 341, 38 N. E. 1094; *Holloran* v. *Midland R. Co.* (1891), 129 Ind. 274, 275, 276, 28 N. E. 549; *Helms* v. *Cook* (1914), 58 Ind. App. 259, 108 N. E. 147.

Whether a vacation appeal is perfected when the transcript and assignment of errors are filed in this court is not of controlling importance in the instant case, because it is conceded in effect by appellant that it took none of the steps necessary to perfect a vacation appeal; that all it did was to assign error on a transcript filed by a coparty who perfected a term-time appeal, and that its appeal is controlled by §675 Burns 1914, Acts 1895 p. 179; that its assignment of error appearing on the transcript filed by its coappellant who perfected an appeal under such section was all that was necessary to perfect its appeal, and that the case of *Cincinnati, etc., R. Co.* v. *Acrea, supra,* in so far as it announces a different rule should be overruled. This contention is based on the last provision of said section which reads: "After any such appeal has been perfected any coparty not joining therein may, at any time while such appeal is pending, and within one year from the date of the final judgment, assign errors for himself upon the record and have all questions, properly presented  decided by the court, and he shall have all

the rights in relation to such appeal, that he would have had if he had joined in the appeal originally."

The wording of this provision lends some support to appellant's contention. However, to arrive at a proper interpretation or construction of a statute, its several provisions must be read together, and such construction or interpretation given it, if possible, as will be consistent with all its provisions. When the section under consideration is so read it becomes manifest, we think, that its controlling object and purpose is to provide an appeal in term whereby any one, or more, of a number of coparties, against whom a judgment has been taken, may appeal without making the remaining coparties parties to the appeal, and without having to give any of the parties to the judgment below any notice other than that which results from the taking of the steps necessary to perfect such an appeal, and at the same time bind all the parties to the judgment below by the judgment rendered on appeal.

In so far as the section purports to relieve an appealing party from the giving of the usual notice of appeal, its provisions apply to those only who perfect an appeal in the manner prescribed by the act. As an incident to the main purpose of the act, and to save the right of a vacation appeal to other coparties who may later make up their minds to take such an appeal, the latter clause of the section was added. It seems manifest that the legislature did not intend by such clause to give to the coparty who only assigns error, and who does not file a bond or take any of the steps required by the act to perfect a term-time appeal, the same rights against appellees which is given to the appealing party who complied with the statute. As before indicated, the only purpose of the latter clause, when read in the light of

what precedes it, was to save to such coparty his right to assign error on the transcript filed and perfect a vacation appeal by giving the notice required in such cases. This is the effect of the holding in the case of *Cincinnati, etc., R. Co.* v. *Acrea, supra,* and we see no reason to overrule or modify the rule there announced.

It follows that the appeal of appellant Wabash Railroad Company should be dismissed, and such appeal is dismissed.

## Opinion On Merits.

Hottel, C.J.—This is a second appeal in an action for damages alleged to have been sustained by appellees in connection with the shipment of a carload of mules from Shelbyville, Tennessee, to Huntington, Indiana. The former appeal was from a judgment in appellees' favor based on a single paragraph of complaint, the substance of which is set out in the opinion rendered in that case and reported in 179 Ind. 483, 101 N. E. 724, under the title, *"Wabash R. Co.* v. *Priddy."*

An examination of that opinion will disclose that the reversal of the former judgment was based on two grounds, viz.: (1) A failure in the proof and finding of facts to show the partnership between the initial and several connecting carriers, and the joint liability based thereon alleged in the complaint upon which such judgment was predicated. (2) The refusal of the trial court to admit in evidence the special contract of shipment under which appellants claimed the stock was shipped.

It will appear from that opinion that the initial carrier, the Nashville, Chattanooga and St. Louis Railway Company, hereinafter referred to as the "N. C. & St. L. Co.," was not sued in the action, and there was a finding and judgment by the trial court upon the former trial in favor of the first connecting carrier, the Louisville

and Nashville Railroad Company, hereinafter referred to as the "L. & N. Co." The appeal was by the appellants, the Chicago, Indianapolis and Louisville Railway Company, hereinafter referred to as the "C. I. & L. Co.," and by the Wabash Railway Company, hereinafter referred to as the "W. Co." There was no appeal from the judgment in favor of the L. & N. Co.

After the rendition of said opinion, the appellees filed an amended complaint in two paragraphs against the three original defendants, the first paragraph of which is based on a common-law liability, its averments being substantially the same as indicated in the former opinion herein, except that there are no averments of partnership. The second paragraph contains substantially the same averments, but is predicated on a special contract which is filed as an exhibit with said paragraph. The C. I. & L. Co. and the W. Co. each answered by a general denial, and the L. & N. Co. filed a general denial and an answer setting up the former judgment in its favor. There was a trial by the court, and at the request of the parties, it returned a special finding of facts, with its conclusions of law thereon. By its conclusions of law, the court found the law to be with appellees that they were damaged in the sum of $1,575, which amount they were entitled to recover from the C. I. & L. Co. and the W. Co., together with their costs, and that the L. & N. Co. should have judgment in its favor against appellees for costs. Exceptions to said conclusions of law were properly saved by the C. I. & L. Co. and the W. Co. Each of said companies filed a separate motion for new trial, and they also filed a joint motion for new trial, each of which motions was overruled, and exceptions saved.

A motion to dismiss the appeal of the W. Co. was sustained by this court, March 25, 1915. *Chicago, etc., R. Co.* v. *Priddy, ante* 552, 108 N. E. 238.

We therefore are required to consider only the errors assigned by the C. I. & L. Co., which are as follows: (1) The court erred in its conclusions of law as to the C. I. & L. Co., upon the facts found specially by it in said cause. (2) The court erred in overruling the motion of appellant C. I. & L. Co. for a new trial.

It is very earnestly contended by appellees that, on account of its failure to comply with the rules of the court in the preparation of its brief, appellant has presented no question for the consideration of the court. The brief is open to criticism in that it consists in the main of general propositions of law without any attempt to apply them to the particular error relied on. However, the first eleven propositions appear under the heading "Error in Conclusions of Law" and are in the main general principles which are of more or less controlling influence in determining whether the facts found warrant the conclusions of law stated thereon, and hence are sufficient, we think, to advise the court at least as to the main ground upon which such conclusions are challenged. To this extent, the propositions set out in the brief will be considered and the questions presented thereby determined. *Indiana Mfg. Co.* v. *Coughlin* (1917), 65 Ind. App. 268, 115 N. E. 260.

The complaint and findings of fact are lengthy, and their substance will be indicated only in so far as we think necessary to an understanding of our disposition of the questions to be considered. To avoid repetition, we shall first state certain general facts substantially as they are shown by each paragraph of the complaint, the finding, and the evidence.

At about 4 o'clock p. m., on January 31, 1907, appellees delivered to the N. C. & St. L. Co., at Shelbyville, Tennessee, twenty-eight mules in good condition, to be shipped to Huntington, Indiana. Said mules were

received by said company and placed in a car and shipped over its line of road to Nashville, where they were transferred and delivered in good condition to the L. & N. Co., which company accepted them and carried them over its line of road to Louisville, Kentucky, where they were delivered to the C. I. & L. Co., which company accepted them and transported them over its line of road to Lafayette, Indiana, where it delivered them to the W. Co., and it accepted them and carried them over its line of road to Huntington, Indiana, their point of destination, where they arrived on February 5, and were there delivered to the appellees. The through rate agreed upon by the initial carrier and appellees for the transportation of said carload of mules was $113. They were shipped over the entire route in the same car, and were at no time accompanied by any caretaker. The initial carrier refused to permit appellees, or any one for them, to accompany said mules on the trains. Delays in transportation, exposure, neglect, and failure to feed, water, and take care of the stock are charged in each paragraph of complaint against the L. & N. Co., the C. I. & L. Co., and the W. Co., and such facts are found by the court against the C. I. & L. Co., substantially as alleged.

Other facts found by the court and authorized by the evidence, affecting appellant and the questions which it seeks to have determined by its appeal, are in substance as follows: Said carload of mules was delivered by the L. & N. Co. to the C. I. & L. Co. at New Albany, Indiana, at 1:30 p. m. February 2, 1907, in good condition. They arrived at Bloomington, Indiana, between 10 and 11 p. m. of said day. They were unloaded about midnight of same day, given hay and water, and reloaded about 7:30 a. m. on February 3, at which time they were in good condition. They arrived at Lafayette about 5 p. m. of the same day, where

they were taken to the stockyards, unloaded, and placed in open pens without covering, where they remained until 9:30 a. m. of the following day, at which time they were again loaded into said car, and the car was sealed and they were permitted to remain in the yards of the company until 2:30 p. m., when they were delivered to the W. Co. The mules had not been properly and sufficiently fed with hay and grain for a period of more than two days immediately prior to their arrival at Huntington, and by reason thereof were in a starved condition when they arrived. After leaving Bloomington, and while en route to Lafayette, the slats on the car were gnawed and eaten by the mules, one of the slats being gnawed through so that one of the mules got his leg through the opening. Said mule was permitted to remain in this condition until the flesh was torn from its leg and it was partly frozen. When the mules arrived at Huntington and were unloaded the door of the car through which they were to be unloaded was frozen fast in the cinders, which had been used as bedding, and in the offal from said mules. One Hargrove, the local passenger and freight agent of the W. Co., directed appellees Heffner and Shaw to remove the door, by removing the attachments at the top of the door. The door was thus taken down. Hargrove was present while the mules were being removed and learned and knew at the time the condition of the mules and car. One of the mules was dead and lying on the floor of the car. Another was down, and while down was removed to the platform outside the car and raised to its feet by a derrick. It could not walk without assistance. All the other mules were suffering from want of food and water, and were starved and gaunt. The mules, because of lack of food, had gnawed and eaten the timbers, slats, and rafters of said car. The tail brushes and manes of many of the mules had been eaten off. Two

of the mules that were living when said car reached Huntington were so badly injured by reason of said lack of proper care and attention on the part of the employes and agents of said C. I. & L. Co. and said W. Co., and because of their failure to feed them, that they could not recover and it became necessary to have them killed. One of these was the mule which got its leg through the car and was permitted to remain in this condition until it was unloaded at Huntington. The foot of this mule finally came off, making it necessary to kill it. When the mules were placed in said car at Shelbyville, Tennessee, appellee Heffner requested the agent of the N. C. & St. L. Co. that he be permitted to accompany said carload of mules on the trains that were to carry the mules to Huntington, and offered to purchase his ticket and pay his fare for such passage, and said ticket agent refused to sell him a ticket, and refused to permit him to accompany said mules, and informed him that it was the business of the companies to care for and feed said animals. A reasonable time for the shipment of said mules from New Albany, Indiana, to Huntington, Indiana, over the lines of the C. I. & L. Co. and the W. Co., including five hours for rest, feed, and water, would be thirty-one hours. Said last-named companies did not ship the mules over their lines with reasonable dispatch, but unnecessarily delayed their shipment. Such defendants did not give the animals sufficient food during the time they were being transported, but negligently suffered them to become injured from want of food, and to become starved, gaunt, and weakened from lack of care and attention, and from unnecessary delay in shipment, to the injury of all of said mules.

The special contract of shipment, made part of the second paragraph of complaint, contains many limitations and conditions of liability, important among which, as affecting appellant's contention that the facts

found by the court do not warrant the conclusions of law stated thereon, are the following:

"3.   The said party of the second part further agrees that he or his agent will load and unload said stock at his own risk, and feed, water and attend the same at his own expense and risk while it is in the stockyards of the party of the first part awaiting shipment or delivery, or at feeding or transfer points en route, or where it may be unloaded for any purpose, and it is agreed that any expense so incurred by the party of the first part, in behalf of the party of the second part or his agents or assigns, for feeding, watering, loading, unloading, or detention and care of such stock, shall be assessed against such stock and collected from connecting carrier and consignee, upon delivery.

"6.   It is further agreed that, in case of accident to or delay of trains from any cause whatever, the owner and shipper is to feed, water and take proper care of stock at his expense.

"10.   The party of the second part, for the consideration above mentioned, further agrees that, in the event of damage, injury or loss occurring to said stock, for which the party of the first part may be liable, before said stock is removed from the possession or premises of the party of the first part, or is mingled with other stock, he will give notice of his claim, in writing, to the carrier's station freight agent at the point of destination, if for a station on the line of the party of the first part, and to its station freight agent at the terminus or junction point at which it is to be delivered to the connecting carrier, if for a destination beyond the line of the carrier of the first part, and if the stock is unloaded before reaching destination or point of delivery to the connecting carrier, the said party of the second part agrees to give said notice in manner and form as herein above specified, to the station freight agent at such point of unloading or the nearest agency station thereto; in all of which cases, the said station freight agent shall be given opportunity to inspect said stock."

Appellant's contention, and the general propositions

of law upon which it bases such contention, may be summarized as follows: Where there is a special contract of shipment, as in this case, such contract constitutes the agreement under which the shipment was moved, and there can be no common-law liability (citing, *Cleveland, etc., R. Co.* v. *Hollowell* [1909], 172 Ind. 466, 88 N. E. 680, and *Armacost, Admr.*, v. *Lindley, Admr.* [1888], 116 Ind. 295, 298, 19 N. E. 138) ; that, as the shipment in question was interstate, the validity of the terms and conditions of the contract under which it is made is governed by the Interstate Commerce Law (*Kansas City, etc., R. Co.* v. *Carl* [1912], 227 U. S. 638, 33 Sup. Ct. 391, 57 L. Ed. 683, 687; *Adams Express Co.* v. *Croninger* [1912], 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. [N. S.] 257; *Wabash R. Co.* v. *Priddy, supra*) ; that the provisions in the contract in question formed a part of the tariff rate for a limited-liability shipment published and filed with the Interstate Commerce Commission, and hence had the effect of law and were binding on shipper and carrier alike (see *Texas, etc., R. Co.* v. *Abilene, etc., Co.* [1906], 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; *Wabash R. Co.* v. *Priddy, supra; Chicago, etc., R. Co.* v. *Kirby* [1911], 225 U. S. 155, 32 Sup. Ct. 648, 56 L. Ed. 1033, Ann Cas. 1914A 501; *Baltimore, etc., R. Co.* v. *New Albany Box, etc. Co.* [1911], 48 Ind. App. 647, 94 N. E. 906, 96 N. E. 28) ; that one of the purposes of the Interstate Commerce Act and the amendments thereto is the enforcement of absolute equality between shippers, and to prevent any and all means, direct or indirect, that may be resorted to to obtain or receive concession or rebate from the fixed rates duly posted and published; that under such act any privilege or advantage extended to one shipper not extended to others which affects the value of the services received by the shipper, and the costs of such serv-

ice to the carrier, is a discrimination in favor of such shipper, and in violation of such act. *Texas, etc., R. Co.* v. *Abilene, etc., Co., supra; Chicago, etc., R. Co.* v. *Kirby, supra,* and cases there cited.

Upon these general propositions and the cases cited in their support, appellant argues that the provisions Nos. 3 and 6 of the special contract, *supra,* imposed upon appellees the duty of accompanying and taking care of, and feeding and watering their stock; that all the damage shown by the finding to have resulted to said stock was caused by their failure to comply with said provisions; that appellees were bound by such provisions and that they inured to the benefit of the connecting carriers, and any waiver or attempted waiver thereof by any such carrier would be a discrimination in appellees' favor, and hence forbidden by said Interstate Commerce Act. The general propositions of law upon which appellant bases its contention may be conceded to be stated with substantial accuracy, and it may be admitted that each of the provisions of said contract, in so far as they are valid, are for the benefit of the connecting carriers as well as the initial carrier (*Kansas City, etc., R. Co.* v. *Carl, supra*), and to the extent that they are valid, they must be upheld and must control the shipment. It is well settled, however, by decisions both prior to and since the enactment of the Interstate Commerce Act, that a carrier can in no case exempt itself from liability for its own negligence or that of its servants. *Wabash R. Co.* v. *Priddy, supra; Adams Express Co.* v. *Croninger, supra,* and cases there cited.

It follows that, though such carrier may contract for the shipper to accompany and care for such stock, it cannot thereby relieve itself, or any connecting carrier, from its or their *negligent failure* to perform such duty, and, to the extent that any

provision of a special contract would attempt to relieve the carrier from such a liability, it would be invalid and void.    Such, we think, is the implied holding of most of the cases cited and relied on by appellant, among them the case of *Adams Express Co.* v. *Croninger, supra.* In that case (pp. 506, 507, 509, 510), in speaking of a stipulation limiting liability to the value of the articles shipped as agreed upon and set out in the special contract, the court, by Lurton, J., said: "What is the liability imposed upon the carrier? (by the Interstate Commerce Act, as amended by the Act of June 29, 1906, 34 Stat. at L. 584 [U. S. Comp. Stat. Supp. 1911 p. 1288]).    It is a liability to any holder of the bill of lading which the primary carrier is required to issue 'for any loss, damage or injury to such property caused by it,' or by any connecting carrier to whom the goods are delivered.    The suggestion that an absolute liability exists for every loss, damage or injury, from any and every cause, would be to make such a carrier an absolute insurer and liable for unavoidable loss or damage though due to uncontrollable forces.    That this was the intent of Congress is not conceivable.    *    *    * That a common carrier *cannot exempt itself from liability from its own negligence or that of his servants is elementary.*    *    *    * The rule of the common law did not limit his liability to loss and damage due to his own negligence, or that of his servants.    That rule went beyond this and he was liable for any loss or damage which resulted from human agency, or any cause not the act of God or the public enemy.    But the rigor of this *liability might be modified through any fair, reasonable and just agreement with the shipper which did not include exemption against the negligence of the carrier or his servants.*    *    *    * 'The limitation as to value has no tendency to exempt from liability for neg-

*ligence. It does not induce want of care.'*" (Our italics.)

The contract in the instant case apparently recognizes the principle announced in the case just quoted, because the stipulation in question does not purport to exempt the carrier from liability for a negligent failure on its part to discharge the duties which such stipulation imposes upon appellees, but simply provides that any expense incurred by the carrier in the performance of such imposed duty may be "assessed against such stock and collected from * * * consignee upon delivery."

It is true that some of the cases cited by appellant— notably, *Williams* v. *Central of Georgia R. Co.* (1903), 117 Ga. 830, 43 S. E. 980; *Central of Georgia R. Co.* v. *James* (1903), 117 Ga. 832, 45 S. E. 223; *Ragsdale* v. *Southern R. Co.* (1903), 119 Ga. 627, 46 S. E. 832; *Southern R. Co.* v. *Tollerson* (1910), 135 Ga. 74, 68 S. E. 798; *Kent* v. *Central of Georgia R. Co.* (1915), 144 Ga. 7, 89 S. E. 1017—seem to lend some support to its contention, but the facts in those cases, and the reasons given for the holding, distinguish them from the instant case as is evidenced by the following language of the court in the case of *Southern R. Co.* v. *Tollerson, supra,* 78: "If by a valid contract the shipper undertakes to accompany the stock himself or have some person accompany them as his agent, and to feed and water them, and the railroad company furnishes him with facilities and opportunity for that purpose, he cannot violate his contract, and yet claim not to be in default. 4 Elliott, Railroads (2d ed.) 1554; *Missouri Pac. Ry. Co.* v. *Texas & Pac. Ry. Co.,* 41 Fed. 913; *Fort Worth, etc., Ry. Co.* v. *Daggett,* 87 Tex. 322 (28 S. W. 525). This shipment was prior to the act of Congress of 1906, commonly called the Hepburn Act; and it is therefore unnecessary to consider the effect of that act."

Section 7 of said Hepburn Act (Act June 29, 1906, ch. 3591, §7, 34 Stat. at L. 595 [U. S. Comp. Stat. Supp. 1907 p. 909]), provides: "That any common carrier, * * * receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, * * * to which such property may be delivered or over whose line * * * such property may pass, *and no contract, receipt, rule, or regulation shall exempt such common carrier * * * from the liability hereby imposed:* Provided, That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." (Our italics.) It seems to us that the addition of this provision to the Interstate Commerce Act, especially the italicized words, *supra,* materially changed such act in its effect upon the question under consideration, and takes from the earlier cases cited by appellant whatever influence they may have had on such question. *Chicago, etc., R. Co.* v. *Scott* (1913), (Tex. Civ. App.), 156 S. W. 294; *Chicago, etc., R. Co.* v. *Linger* (1913), (Tex. Civ. App.), 156 S. W. 298; *McKahan* v. *American Express Co.* (1911), 209 Mass. 270, 95 N. E. 785, 35 L. R. A. (N. S.) 1046, Ann. Cas. 1912B 612.

8. What effect the stipulation of the contract under consideration might have on the question whether the *carrier was negligent* if the appellees had accompanied the stock, or if the carrier had offered them the opportunity to accompany it, and had not known that the stock was unaccompanied, we need not decide, because there is an express finding in the instant case that the initial carrier refused to permit appellees to accompany it, that it was unaccompanied

when received and accepted for shipment by appellant, and that they knew it was unaccompanied.   It follows that appellant is in no position to urge as an excuse for its failure to perform the duty of looking after and caring for said stock, and as evidence of its reasonable and ordinary care in such respect, the fact that said duty was assumed by appellees.

The finding above set out clearly shows a *negligent* failure to perform this duty and a damage to the stock resulting therefrom, and hence a liability from which appellant could not be relieved.

Appellant, in its brief, under the heading "Error in Conclusions of Law," makes the point that the damage assessed should have been for such portion of the real loss as the value agreed upon in the special contract sustained to the actual value of the stock, but in its oral argument conceded, and properly so, that such agreement as to values only has the effect of limiting the amount of the liability to the stipulated value. *United States Express Co. v. Joyce* (1905), 36 Ind. App. 1, 69 N. E. 1015; Id. (Ind.), 76 N. E. 1117.

It is further contended that an item for the money expended in curing the mules was improperly included in the amount of the damages assessed, making a double assessment as to such item.   Assuming, without so deciding, that this is true, the question is not properly presented by appellant's briefs under the heading "Error in Conclusions of Law." The only way, if any, in which such question can be said to have been presented to the trial court for correction was by the ground of the motion for new trial alleging that the damages assessed are excessive, and this ground is not referred to in appellant's points and authorities, and is not referred to in its brief under the heading "Error in Overruling Motion for New Trial."

Under the heading "Error in Overruling Motion for New Trial," appellant states numerous general propositions which we assume are intended to apply to that ground of the motion which challenges the evidence as being insufficient. It is contended that there is no evidence to show that any of the injuries of the mules complained of and found by the court occurred while they were in appellant's possession, or that appellant was guilty of any negligence. Our examination of the evidence convinces us that the trial court was warranted in its findings indicated *supra*.

Appellant also insists that the court erred in permitting the evidence relative to the initial carrier refusing to permit appellees to accompany their stock.

11. We think the evidence was proper, at least to explain appellees' failure to accompany the stock. *Welker* v. *Appleman* (1909), 44 Ind. App. 699, 90 N. E. 35; *Hanley* v. *Chicago, etc., R. Co.* (1912), 154 Ia. 60, 134 N. W. 417, 66 Am. & Eng. R. Cas. 702. Whether such refusal could be charged against appellant, or what effect it would have upon the question of its liability, is not of controlling influence in view

12. of the fact that the finding shows that appellant accepted the stock knowing that it was unaccompanied by a caretaker, and that after so accepting such stock it *negligently* failed to care for it in the respects set out in the finding. Appellant's liability was fixed by said finding regardless of said evidence, and its admission was, in any event, harmless.

It is also claimed that the evidence shows a failure to comply with provision No. 10 of the special contract above set out, and that such failure bars a re-

13. covery. Such a provision to be valid must be reasonable, and should, in any event, be given a reasonable construction in view of the facts of each particular case. *Louisville, etc., R. Co.* v. *Steele* (1892), 6

Ind. App. 183, 33 N. E. 236; *Richardson* v. *Chicago, etc., R. Co.* (1899), 149 Mo. 311, 50 S. W. 782; *Glenn & Sons* v. *Southern Express Co.* (1888), 86 Tenn. 594, 8 S. W. 152; *Goggin* v. *Kansas, etc., R. Co.* (1874), 12 Kan. 416; *Baxter* v. *Louisville, etc., R. Co.* (1897), 165 Ill. 78, 45 N. E. 1003.

The evidence and finding of facts both show that the agent of the W. Co. was present and assisted and gave directions in the removal of the mules, and saw that one of them was dead and that the condition of the others was such that they needed to be immediately taken away and cared for. Their condition was such that appellees could not then know the extent of their injury. Seven days after the delivery of the mules at Huntington, to wit, on February 12, 1907, the agent of the W. Co. was served with a written notice containing an itemized statement of appellees' claim. This was a sufficient compliance with said stipulation in the light of the facts disclosed by the evidence and finding. *Louisville, etc., R. Co.* v. *Steele, supra; Ormsby* v. *Union Pacific R. Co.* (1880), 4 Fed. 170; *Kime* v. *Railway Co.* (1910), 153 N. C. 398, 69 S. E. 264, 61 Am. & Eng. R. Cas. 704; *Hinkle* v. *Railway Co.* (1900), 126 N. C. 932, 36 S. E. 348, 78 Am. St. 685; *Western R. Co.* v. *Harwell* (1893), 97 Ala. 341, 11 South. 781; *Harned* v. *Missouri, etc., R. Co.* (1892), 51 Mo. App. 482; *Gulf, etc., R. Co.* v. *Stanley* (1895), 89 Tex. 42, 33 S. W. 109; *Atchison, etc., R. Co.* v. *Collins* (1891), 47 Kan. 11, 27 Pac. 99; *Atchison, etc., R. Co.* v. *Temple* (1891), 47 Kan. 7, 27 Pac. 98, 13 L. R. A. 362; *Missouri, etc., R. Co.* v. *Davis* (1909), 24 Okl. 677, 104 Pac. 34, 24 L. R. A. (N. S.) 866.

Finding no reversible error in the record, the judgment below is affirmed.

NOTE.—Reported in 108 N. E. 238, 115 N. E. 266. Carriers: limitation of liabilities of carriers of live stock, 63 Am. St. 565;

removal of live stock from carrier's premises before notice of claim for damages, where such notice is given in time for examination, 24 L. R. A. (N. S.) 866; validity and effect of contract stipulation limiting time to present claim against owner of live stock, 9 Ann. Cas. 17, 14 Ann. Cas. 416, Ann. Cas. 1914A 231; liability of connecting carrier for loss beyond its line, 31 L. R. A. (N. S.) 1. See under (7, 9) 10 C. J. 164; (13, 14) C. J. 332.